## THE STATE v. JOSH HARP, Appellant.

### Division Two, December 31, 1924.

1. **MANSLAUGHTER: Instruction: Sufficient Evidence.** Evidence of blows and personal injury, received by defendant at the time of a scuffle between deceased and defendant, indicted and tried for murder, is sufficient to require an instruction on manslaughter.

State v. Harp.

2. **EVIDENCE:** Cross-Examination: Witnesses in Employ of Railroad: Interest in Defendant: Credibility. It is not error to permit the prosecuting attorney to show, on cross-examination of the witnesses for defendant, who at the time of the homicide was a special officer and watchman of a railroad and ordered deceased to keep off of the cars and leave the right of way, whether such witnesses were in the service of the same railroad. The relationship of the defendant and such witnesses to the railroad may be shown in order that the jury may take that fact into consideration in determining what weight they will give to the testimony of the witnesses. Besides, the cross-examination of witnesses rests largely in the exercise of a sound judicial discretion of the trial court.

3. **INSTRUCTION:** Second Degree Murder: Direction for Malicious Assault. An instruction telling the jury that if they find from the evidence that defendant "wilfully, feloniously, premeditatedly and with malice aforethought did make an assault upon deceased with a pistol loaded with gunpowder and leaden balls, and did shoot him in a vital part of the body, with a leaden ball discharged from said pistol by defendant, thereby inflicting on him a mortal wound, from which said wound he then instantly died, you will find defendant guilty of murder in the second degree," in its first portion directs the jury to find that defendant assaulted deceased with a loaded pistol, whereas he was charged with murder, and in its second part does not require them to find that defendant intentionally shot deceased, and was erroneous.

4. ————: Unnumbered. Where numerous instructions are asked it is well to separately number them.

Citations to Headnotes: 1, Homicide, 30 C. J. par. 653; 2, Witnesses, 40 Cyc. 2512; 3, Homicide, 30 C. J. par. 651.

Appeal from Stoddard Circuit Court.—*Hon. E. P. Dorris,* Judge.

REVERSED AND REMANDED.

*T. R. R. Ely* and *Wammack & Welborn* for appellant.

(1)  The verdict in this case should be reversed because of the insistence of the attorneys assisting in the prosecution in trying to get before the jury and emphasize the connection of witnesses for defense with the railway

company. These efforts were sometimes countenanced and sometimes not by the court, but always strenuously insisted upon by the State at every opportunity. State v. Lasson, 292 Mo. 169; State v. Jackson, 95 Mo. 653; State v. Burns, 286 Mo. 671; Gore v. Brockman, 138 Mo. App. 235; Boten v. Ice Co., 180 Mo. App. 111. (2) The court erred in the main instruction given by the court defining murder in the second degree, and purporting to outline the facts which the jury should find in order to warrant a conviction of the defendant. State v. Birks, 199 Mo. 263; State v. Woodward, 191 Mo. 628; State v. Williams, 184 Mo. 265; State v. Helton, 234 Mo. 563; State v. Burns, 278 Mo. 446. (3) The court erred in failing to instruct the jury on manslaughter. State v. Conley, 255 Mo. 189; State v. Heath, 221 Mo. 586; State v. Ellis, 74 Mo. 207.

*Jesse W. Barrett,* Attorney-General, and *Ellison A. Poulton,* of counsel, for respondent.

(1) The trial court did not err in permitting the State to cross-examine defendant's witnesses as to whether or not they were in the employ of the railroad company. Nor were the allusions to that employment by counsel for the State error. The cross-examination was admitted solely for the purpose of showing the witnesses' interest in the case as fellow-employees and otherwise. In determining what weight is to be given to a witness's testimony it is proper to show the relation between the witness and the party he is testifying for. Huss v. Bakery Co., 210 Mo. 76. (2) The trial court did not err in giving instruction numbered 1. It contained all the elements necessary to an instruction on murder in the second degree. State v. Liolios, 252 S. W. 622; State v. Murphy, 292 Mo. 292; State v. Bauerle, 145 Mo. 18; State v. Emory, 46 S. W. 951. The first sentence of the charge defined murder in the second degree as the killing of a human being wilfully, feloniously, premeditatedly and with malice aforethought. The instruc-

tion then charges that if defendant wilfully, etc., made an assault with a pistol, etc., and if you find said defendant did shoot—from said pistol, etc. An unstrained construction links the shooting with the elements, wilfully, feloniously, etc. There was no assault with a pistol other than the shooting in evidence during the trial. In view of this, and in view of the first sentence, no prejudice to appellant meriting reversal is to be found in the instruction. (3) The failure of the trial court to instruct on manslaughter was reversible error. Instructions on manslaughter and self-defense may both be given where the facts justify them. There was sufficient evidence of personal violence to defendant here (scuffle, blows and injury) to require an instruction on manslaughter. State v. Burrell, 252 S. W. 711; State v. Conley, 255 Mo. 199; State v. Wilson, 242 Mo. 498; State v. Brown, 188 Mo. 466; State v. Weakley, 178 Mo. 423; State v. Wensell, 98 Mo. 147.; State v. Partlow, 90 Mo. 614.

RAILEY, C.—After reading the testimony presented in the record, we are satisfied that the statement of the case as presented by counsel for respondent is substantially correct, and is hereby adopted as our statement of the facts, as follows:

Appellant, Josh Harp, was charged by an information filed in the Circuit Court of Dunklin County, Missouri, on the 5th day of May, 1922, with the crime of murder in the first degree, in that he, on or about the 5th day of April, 1922, wilfully, deliberately, premeditatedly and of his malice aforethought shot and killed one Irving Spinks. He was tried on the 24th day of March, 1923, before a jury, and was found guilty of murder in the second degree as charged in the information and his punishment assessed at imprisonment in the penitentiary for a term of twenty years. Judgment was rendered in accordance with the verdict, from which appellant appeals to this court.

The State's evidence tended to show that between four-forty and five o'clock on the afternoon of April 5, 1922, Irving Spinks, a boy of eighteen or nineteen years of age, and Ben Mercer, were "bumming" their way on a Cotton Belt freight train which at that time was in Malden, Dunklin County. The defendant climbed up on the car where they were, ordered them out and followed them when they climbed down. They walked from where the train was stopped to about one hundred yards from the depot. Spinks and Mercer stood there waiting for the train, with the idea of catching it again. Defendant, who at this time was on the train, jumped off about ten feet from them and ordered them off of the right of way. It was about thirty or forty feet to the right of way fence. Spinks and Mercer crossed a ditch six feet deep, went to the fence and climbed over it. Defendant came running down toward the fence, put his hand into his hip pocket and ordered them back. Mercer climbed back over the fence first and on doing so defendant said, "Get on down that way," and he trotted off ten or fifteen steps. He then looked back over his shoulder and saw that deceased had gotten back over the fence and defendant had hold of deceased with his left hand and at about that time defendant fired, from which shot deceased died in a few minutes. They had been standing close to the right of way fence. Defendant then left the scene going in the direction of the depot. Neither the deceased nor the defendant had spoken to each other. Spinks had no weapon of any kind upon him. The deceased made no demonstration or assault upon the defendant. The defendant's evidence tended to show that the defendant, a special officer of the Cotton Belt Railroad, was in his mother-in-law's restaurant across the tracks from the depot at Malden when he first saw deceased and Mercer on a freight train. He walked over to where they were and told them they couldn't ride on the train and they would have to get off  He followed them down the track, and when the train started caught the engine and rode on it. It was part of his duty to

ride that train as far as Paragould or Jonesboro, Arkansas. He saw Mercer and the deceased standing on the right of way, and got off of the engine to keep them from riding on the train. As he approached them he said, "Are you boys going to catch this train?" They answered that they were and he then said, "I put you boys off this train and you can't ride on this train; get on off the right of way." Mercer started off, and the deceased ran around and grabbed him saying, "Come on Buddy, let's clean this guy." The defendant and deceased scuffled and wrestled around for the possession of defendant's gun. In the course of the struggle they came next to the right-of-way fence. The deceased at one time got the revolver completely away from defendant, but defendant regained hold of the handle. They wrestled and scuffled until deceased backed defendant up against the fence. Defendant at that time weighed 130 pounds, and deceased, who weighed 140 to 150 pounds, was stronger than he. While backed up against the fence defendant noticed blood trickling down on his hand. He thought deceased was going to kill him because he had said, "Come on and let's take this guy," and shot him for that reason alone. His clothes and arm were cut by the barbed-wire fence. The cuts in his arm were so bad that they were attended to by his wife at his mother-in-law's immediately after the shooting, and the next day by a physician at Kennett, where he was placed in jail. At the place where the homicide occurred the ground showed signs of a scuffle. At the time when defendant left his wife and went to the train he was in perfect good humor. Earlier in the day of the homicide a special officer of the railroad at Illmo had ordered Mercer and the deceased out of the railroad yards of that city. The two started walking off making a remark that they guessed they would ride the train if they took a notion to. Six witnesses testified for the defendant that his general reputation in the community in which he lived for being a peaceable, law-abiding citizen was good.

I. The Attorney-General and his assistant, with commendable frankness, have confessed error in this case, as follows:

"The failure of the trial court to instruct on manslaughter was reversible error. Instructions on manslaughter and self-defense may both be given where the facts justify them. There was sufficient evidence of personal violence to defendant here (scuffle, blows and injury) to require an instruction on manslaughter. [State v. Burrell, 252 S. W. 709, 1. c. 711; State v. Conley, 255 Mo. 185; State v. Wilson, 242 Mo. 481; State v. Brown, 188 Mo. 451; State v. Weakley, 178 Mo. 413; State v. Wensell, 98 Mo. 137; State v. Partlow, 90 Mo. 608.]

<span style="float:left">Manslaughter.</span>

We have set out the testimony heretofore and, after reading the record, without hesitation conclude that the confession of error by counsel for respondent is fully sustained by the law and facts of the case.

As the cause must be reversed and remanded, it is deemed advisable to consider some of the other assignments made by appellant.

II. Serious complaint is made in respect to the ruling of the trial court in permitting plaintiff's counsel to show that defendant's witnesses were in the service of the St. Louis Southern Railway Company by whom defendant had been employed.

In Russ v. Bakery Co., 210 Mo. 1. c. 76, it was held proper for defendant, on cross-examination of plaintiff's witnesses, to show that they were members of the same labor union with plaintiff. The court there said: "This evidence was admitted for the purpose of showing the relation that existed between the plaintiff and his witnesses, in order that the jury might take that fact into consideration in determining what weight it should give to their testimony. Such evidence is always admissible."

<span style="float:left">Interest of Witness.</span>

The principle of law announced in the above quotation was recently followed, by Court in Banc, in Sommer

State v. Harp.

v. Cont. Portland Cement Co., 295 Mo. 1. c. 526, and following.

The cross-examination of witnesses rests largely in the exercise of a sound judicial discretion on the part of the court. Upon reading the record and briefs in this case, we have reached the conclusion that some few of the questions propounded to appellant's witnesses might have been modified so as not to appear as a comment of counsel on the veracity of the witnesses. It is not likely that the matters complained of will be repeated on a re-trial of the cause.

III. The trial court is charged with error in giving to the jury the main instruction defining murder in the second degree, which reads as follows:

Instruction.

"Murder in the second degree is the killing of a human being wilfully, feloniously, premeditatedly and with malice aforethought.

"Bearing in mind the definitions heretofore given of the terms wilfully, premeditatedly, feloniously and malice aforethought, if you find and believe from the evidence that at the County of Dunklin in the State of Missouri, on or about the 5th day of April, 1922, the defendant Josh Harp, wilfully, feloniously, premeditatedly and with malice aforethought, did make an assault upon one Irving Spinks with a pistol loaded with gunpowder and leaden balls, and if you find and believe that the said defendant did shoot him, the said Irving Spinks, in a vital part of the body, with a leaden ball discharged from said pistol by the defendant, thereby inflicting upon him, the said Irving Spinks, a mortal wound, from which said wound he, the said Irving Spinks, then and there instantly died, you will find the defendant guilty of murder in the second degree, and unless you find the facts so to be, you will acquit the defendant.

"If you find the defendant guilty of murder in the second degree, you will assess his punishment at impris-

onment in the State Penitentiary for such length of time as you may deem proper, not less than ten years.''

The first portion of this instruction charges defendant with having assaulted Spinks with a loaded pistol. He was prosecuted for *murder*, and not for an *assault.* For aught that appears in the remaining portion of said instruction, the defendant may not have *intentionally* shot deceased, etc. In defining second degree murder, the jury should have been required to find, in substance, that defendant wilfully, premeditatedly and of his malice aforethought, shot and killed Irving Spinks, etc. The instruction, as given, has been condemned by many decisions of this court, and so far as we are advised has been sustained in none. [State v. Murphy, 292 Mo. l. c. 292; State v. Emory, 246 S. W. (Mo.) l. c. 951; State v. Gallagher, 222 S. W. (Mo.) l. c. 467; State v. Conley, 255 Mo. l. c. 187, 194; State v. Clay, 201 Mo. l. c. 681, 686; State v. Birks, 199 Mo. 263; State v. Woodward, 191 Mo. l. c. 627; State v. Williams, 184 Mo. l. c. 263; State v. Privitt, 175 Mo. 215, 223; State v. Bauerle, 145 Mo. l. c. 18 et seq.; State v. Arnewine, 126 Mo. l. c. 572; State v. Moxley, 115 Mo. 644; State v. Green, 111 Mo. l. c. 588.]

In State v. Bauerle, 145 Mo. l. c. 18, the following instruction was held to be proper in a case of this character;

''The court instructs the jury that if you believe and find from the evidence in this cause, beyond a reasonable doubt, that the defendant, at the County of Lafayette and State of Missouri, on or about the 26th day of April, 1896, willfully, premeditatedly and of his malice aforethought shot and killed one Amelia Bauerle, but without deliberation, you will find the defendant guilty of murder in the second degree and will assess his punishment at imprisonment in the penitentiary for a term of not less than ten years.''

This instruction just quoted has been expressly approved in State v. Murphy, 292 Mo. l. c. 292; State

v. Emory, 246 S. W. (Mo.) l. c. 951, and State v. Gallagher, 222 S. W. (Mo.) l. c. 467. On a re-trial of the case, the main instruction relating to second-degree murder should follow in form, or substance, the principle of law contained in the above quoted instruction.

IV. On the trial of these cases where numerous instructions are asked, it would be well to have the same separately numbered.

We do not deem it necessary to pass upon any of the other questions raised in the case. On account of the errors heretofore pointed out, the cause is reversed and remanded for a new trial. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of Railey, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.