The State v. Margaret Allister, Appellant.— 295 S. W. 754.

Division Two, June 3, 1927.

1. **INSTRUCTION: Murder in Second Degree: Premeditatedly, etc.: Both Assault and Shooting.** An instruction on murder in the second degree which tells the jury that if they find and believe from the evidence that defendant "wilfully, premeditatedly and of her malice aforethought, upon one Paul Murdock did make an assault and a certain automatic pistol . . . did shoot off at, upon and against one Paul Murdock, inflicting upon him a mortal wound," etc., required the jury to find that the shooting was done wilfully, premeditatedly and with malice aforethought, and is not erroneous in failing, after using these words to describe the assault, to carry them over to the shooting and by repetition make the instruction say that the shooting, as well as the assault, was done wilfully, premeditatedly and with malice aforethought.

2. ———: ———: **Intent: Deadly Weapon.** An instruction on murder in the second degree which requires the jury to find that defendant wilfully and premeditatedly shot deceased with an automatic pistol, loaded with gunpowder and leaden balls, inflicting a mortal wound, need not otherwise expressly require a finding that there was an intent to kill. Such a pistol is a deadly weapon, likely to produce death, and one who uses a weapon likely to produce death in making an assault upon another is presumed to intend death, as all persons are presumed to intend the actual and necessary consequences of their acts; and particularly so, where they wilfully and premeditatedly commit such acts.

3. ———: ———: **Manslaughter: Omission of Self-Defense.** An instruction in the trial of a defendant for murder in the second degree, wherein the defense is self-defense and justifiable homicide, and wherein the jury find her guilty as charged, an instruction telling the jury that "if the defendant did feloniously, but without deliberation, premeditation or malice aforethought, shoot and kill" deceased, they can find her guilty of manslaughter, and correctly defining "feloniously," is not erroneous or too broad in that it fails to include self-defense or justifiable homicide, where such defense is fully set forth in other instructions. If the jury had found defendant guilty of manslaughter, the instruction might have been harmful, because it gave the jury no opportunity to acquit on the ground of self-defense; but as the jury found her guilty of murder in the second degree, and as the instruction on murder authorized an acquittal if they found that the killing was done in self-defense or was justifiable homicide, and as other instructions given fully covered the matter of self-defense, and thereby the jury was fully authorized to find the defendant guilty of murder in the second degree, or of manslaughter, or to acquit her on the ground of self-defense, said instruction on manslaughter was not erroneous.

---

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 2466, p. 1031, n. 86; Section 2493, p. 1050, n. 84. Homicide, 30 C. J., Section 347, p. 140, n. 50; p. 141, n. 58; Section 352, p. 142, n. 83; p. 143, n. 86; Section 358, p. 146, n. 59; Section 595, p. 340, n. 20; Section 597, p. 343, n. 62; Section 654, p. 409, n. 34; Section 672, p. 426, n. 93.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern,* Judge.

AFFIRMED.

*James W. Broaddus* for appellant.

(1) Instruction 2 is erroneous for the reason that appellant was on trial for murder and not for assault. State v. Harp, 306 Mo. 428, 267 S. W. 845. (a) An intent to kill is an essential element of murder in the second degree. State v. Gassert, 65 Mo. 352; State v. Wieners, 66 Mo. 13; State v. Shock, 68 Mo. 552. (b) An intent to kill cannot be presumed from the mere fact of killing. Maher v. People, 10 Mich. 212; State v. Porter, 34 Iowa, 131; State v. Snow, 293 Mo. 143. (2) Instruction 3 was erroneous for the reason that it purports to cover the entire case, and directs a verdict, and wholly ignored the defense of self-defense set up by appellant. State v. Jones, 273 S. W. 731; State v. Gabriel, 301 Mo. 365; State v. Slusher, 301 Mo. 285; State v. Harris, 267 S. W. 804; State v. Collins, 292 Mo. 102. (3) The court should instruct on all questions of law arising in the case. Sec. 4025, R. S. 1919; State v. Conway, 241 Mo. 271; State v. Bates, 239 Mo. 507. (4) No malice was shown. State v. Wieners, 66 Mo. 13; State v. Harris, 209 Mo. 423.

*North T. Gentry,* Attorney-General, and *David P. Janes,* Assistant Attorney-General, for respondent.

(1) The testimony comes from eyewitnesses, and the circumstances as related by them, if believed by the jury, fully warrant the verdict. The statement that the verdict is against the law, as declared in the instructions, is very general in nature and must be considered in the light of subsequent exceptions as to particular instructions. (2) The verdict was guilty in the second degree, and instruction numbered two, taken in conjunction with instruction numbered five, properly defines this class of murder. Sec. 3231, R. S. 1919; State v. Hudson, 59 Mo. 135; State v. Gregory, 178 Mo. 48; State v. O'Hara, 92 Mo. 59; State v. Robertson, 178 Mo. 496.

WHITE, J.—A jury in the Circuit Court of Jackson County, October 31, 1923, found the defendant guilty of murder in the second degree, and assessed her punishment at ten years' imprisonment in the State Penitentiary. A judgment followed, from which she appealed.

The defendant was charged with the murder of Paul Murdock, June 15, 1923. She was at the time twenty-two years of age, and Murdock was thirty-one. The girl formerly lived at Midway, Kansas, with her father, who was a coal miner. When sixteen years old she

went to Kansas City and obtained a job as waitress in the St. Louis Hotel. She boarded with a Mrs. O'Laughlin, 2137 Summit Street. Paul Murdock, a patron of the St. Louis Hotel, began to pay her attentions, took her out and gave her presents. He visited her at the O'Laughlin house until Mrs. O'Laughlin forbade her to receive him as a caller there.    He then rented an apartment at 804 West 14th Street, where he took the girl and kept her for five or six years, paying the rent and furnishing her clothing and board. He was a married man all the time, 'and that fact was known to her. He operated a soft-drink establishment at 1201 Liberty Street, Kansas City. The place was sometimes mentioned as a saloon.

In the street near his place of business, Paul Murdock was shot by the defendant July 15, 1923. Three witnesses for the State testified to the actual shooting. One McCray, a painting contractor, and one Mr. Peck, were in the act of getting in an automobile near Murdock's saloon when they heard a shot. The looked and saw a woman firing at a man in the street, and backing away from him as she fired. She fired four shots. He was hit in the foot; one bullet entered his heart, and one penetrated his brain. The woman was the defendant, and the man was Murdock. According to McCray, Murdock was several feet distant from the defendant as she fired. That distance was increased as she backed away, and one shot was fired after he fell to the ground. He was corroborated in that statement by Mr. Peck, with whom he was in company, and one Herschel Boardman who saw the incident.

The defendant testified on her own behalf that Murdock had treated her cruelly; had taken charge of her conduct, would not allow her to go out, nor to see anybody; manifested extreme jealousy, even beat her, and on this occasion had twisted her arms so painfully that she fired at his foot. He struck her and continued to twist her arms; she backed away and continued firing. The effect of her testimony was that she fired in self-defense, though she had taken the precaution to carry her automatic that morning.

Murdock was described as a tall, athletic man, six feet, one and a half inches in height, and weighed 210 pounds. He had been a prize fighter and a promoter of prize fights. The defendant testified that he had promised to get a divorce from his wife and marry her. There appears to be no conflict in the evidence except as to the actual occurrence at the time the shooting was done. Murdock was instantly killed.

I.   The appellant assigns error to the giving by the court of instruction numbered 2, on murder in the second degree, as follows:

"The court instructs the jury that if you find and believe from the evidence beyond a reasonable doubt that at the County of Jackson and State of Missouri at any time within three years **Premeditated:** before the 2nd day of August, 1923 (the date of the **Both Assault** filing of the information in this case), the defendant **and Shooting.** Margaret Allister wilfully, premeditatedly, and of her malice aforethought, upon one Paul Murdock did make an assault and a certain automatic pistol which was then and there loaded with gunpowder and leaden bullets did shoot off at, upon and against one Paul Murdock inflicting upon him a mortal wound from which said mortal wound the said Paul Murdock within one year thereafter at the County of Jackson and State of Missouri died, then you will find defendant guilty of murder in the second degree and assess her punishment for a term of not less than ten years in the State Penitentiary unless you shall find and believe from the evidence that such killing, if any, was done, in self-defense and thereby justified as defined in Instruction Number 4."

The objection is that the instruction does not require a finding that the shooting was done wilfully, premeditatedly, and with malice aforethought, as required for murder in the second degree. While that language is used in the instruction relating to the assault which defendant made upon Paul Murdock, the argument is that those words defining the nature of the assault were not "carried over" into the act of firing the pistol and inflicting the mortal wound, and while the assault was made premeditatedly, etc., the shooting, and inflicting the wound were not necessarily so. The jury was required to find that Margaret Allister "wilfully, premeditatedly and with malice aforethought upon one Paul Murdock did make an assault and a certain automatic pistol . . . did shoot off at, upon and against one Paul Murdock, inflicting upon him a mortal wound" from which he died, etc.

The mention of the shooting was explanatory, and describes *how* she committed the assault. She assaulted Murdock by shooting him with a pistol, and the shooting is directly connected with the death in the same sentence—"inflicting upon him a mortal wound." It is absurd to say that the statement is not definite and clear; that the wound was inflicted by the shot. Or, that the assault was not effected by the shooting.

The instruction might have been simpler in form, as in State v. Bauerle, 145 Mo. l. c. 18.

But, an instruction of this kind, even if it were grammatically and logically incorrect, could be condemned only if it were likely to mislead the jury. How would it be possible for a jury to understand that the assault was accomplished in any other way than by the shoot-

ing which inflicted death? The charge is not an attempt to assault but an *actual assault,* which could occur only as described, by the shooting. It is a refinement without substance to say the jury was not required to find that the shot was fired with premeditation and malice aforethought. In order to avoid the conclusion that such was not the case, and dissociate the shooting from the assault, the jury would have to find that the assault was effected by some other means, not mentioned; that *after* the assault defendant forgot, or discarded, her premeditation and malice aforethought, and in another frame of mind shot the defendant. This without any intervening cause or suggested lapse of time. Such is the roundabout and subtle course of reasoning which the jury must have followed to reach a conclusion that the fatal shooting might have been induced by some mysterious motivation; not present when the assault occurred.

The appellant cites the case of State v. Harp, 306 Mo. 428, in which a similar instruction was held bad by this court. That case was reversed on account of other errors, and what was said about the instruction on murder in the second degree is not supported by the former rulings of this court.

II. It is further objected that the instruction does not require a finding by the jury that there was an intent to kill. The instruction did require the jury to find that the defendant shot Murdock

**Intent.** with an automatic pistol loaded with gunpowder and leaden bullets, and inflicted a mortal wound. A person is presumed to intend the actual and necessary consequences of his acts. Where one uses a weapon likely to produce death in making an assault upon another, and death ensues, the one who commits the act is presumed to intend death. [30 C. J. 140, 141; State v. Bowles, 146 Mo. l. c. 12; State v. Fairlamb, 121 Mo. 146; State v. Hart, 309 Mo. 85.] The general rule is that the presumption of murder in the second degree arises where an intentional killing occurs in a manner such as that described by the witness here. [State v. Snow, 238 S. W. l. c. 1071; State v. Bowles, 146 Mo. l. c. 12.] When the defendant shot Murdock, using a deadly weapon and inflicting a mortal wound, she is presumed to have intended to kill, and, if there was an absence of qualifying circumstances tending to show deliberation, or the commission of a lesser offense, the act was murder in the second degree. The jury was required to find that the defendant willfully and premeditatedly fired the shot. If so, she intended to fire it and intended to produce death. The finding of that intention and that effect includes the finding that the weapon was deadly. Qualifying circumstances were a matter of defense. [State v. Tabor, 95 Mo. l. c. 595; State v. Snow, 238 S. W. l. c. 1073; 30 C. J. 142-3.]

III. Appellant complains of Instruction Number 3, on man-slaughter. It directed the jury that if "the defendant did feloniously,

**Manslaughter.** but without deliberation, premeditation or malice aforethought, shoot and kill the deceased Paul Mur-dock," they could find the defendant guilty of manslaughter. The objection is that it purported to cover the whole case and directed a verdict of guilty, omitting from consideration justifiable homicide, or self-defense, set up by the appellant.

The only reason why an erroneous instruction on manslaughter could injuriously affect the defendant is that a correct instruction might have given the jury an opportunity to find the defendant guilty of manslaughter. The defendant was found guilty of murder in the second degree and was given the lightest punishment allowed for that offense. If the instruction was erroneous in that it was not broad enough, so that the jury were deprived of the power to find defendant guilty of manslaughter and inflict lighter punishment, there might be room for complaint. But the complaint is not that the instruction was not broad enough, but that it was too broad. The objection is not that it was so framed as to prevent a verdict for manslaughter, but that it did not allow a verdict of not guilty.

Manslaughter, under Section 3236, Revised Statutes 1919, is defined as: "every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide."

The instruction told the jury that if the defendant did the killing "feloniously" without those elements which constitute murder, they would find the defendant guilty of manslaughter. The court defined "felonious" to mean "wickedly and against the admonition of the law; unlawfully." That, in effect, is exactly what the statute covers in its definition of manslaughter. There is no complaint that the terms were not sufficiently defined, or that the jury should have pointed out what is meant by "unlawfully" as applied to the facts in the case. It is complained only that they did not have opportunity, in construing the instruction on manslaughter, to find the defendant not guilty.

If the jury had found the defendant guilty of manslaughter then the instruction might have been harmful because the jury in determining the quality of her offense had no opportunity to acquit on the ground of self-defense. But the jury found the defendant guilty of murder in the second degree, and the instruction on murder authorized an acquittal if they should find that the killing was done in self-defense, as defined in Instruction No. 4. Instruction Number 4, to which there was no objection, fully covers the matter of self-defense. So, under the instructions, the jury could have found the defendant guilty of murder in the second degree, or they could have

317 Mo. Sup.—23.

found her not guilty on the ground of self-defense. That was the alternative presented them in Instruction 2. They were authorized to find her guilty of manslaughter if they found facts which warranted it. In considering all the instructions presented, they could not misunderstand that they were authorized to find the defendant guilty of murder in the second degree, of manslaughter, or, not guilty. In the case of State v. Gore, 292 Mo. 173, l. c. 186, an instruction on manslaughter which omitted the reference to self-defense was held to be not erroneous, because there were other instructions sufficiently submitting the question of self-defense. In that case the defendant was convicted of manslaughter.

There was no error in the instruction as given on manslaughter. The judgment accordingly is affirmed. All concur.