### STATE v. GEORGE A. OELSCHLEGEL.[1]

February 24, 1928.

No. 26,533.

**Testimony of accomplices corroborated.**

1. In this prosecution for larceny, the testimony of the accomplices was sufficiently corroborated.

**Proof of similar thefts admissible.**

2. Where there is evidence tending to show that pursuant to a prearranged plan the same parties, within a brief period, committed a series of similar thefts, proof of the commission of the other thefts is admissible as corroborative evidence on a prosecution for a particular theft of the series.

**When defendant's statement before trial should be excluded.**

3. That a statement previously made by defendant was used as a memorandum in framing questions asked him on cross-examination did not entitle him to put the entire statement in evidence. Excluding it was no violation of the rule that where an admission of a party is shown he is entitled to show the entire statement made at the same time, for defendant had an opportunity to show all the facts in connection with the admissions elicited by the questions.

**No error in rulings or in refusal to charge.**

4. There was no error in the rulings; nor in refusing requests of defendant covered by the general charge.

[1]Reported in 218 N. W. 117.

Criminal Law, 16 C. J. p. 572 n. 13; p. 591 n. 34; p. 603 n. 86; p. 712 n. 30; p. 1063 n. 85.

See note in 62 L. R. A. 231, 281; 43 L.R.A.(N.S.) 776; 17 R. C. L. 75.
See note in 2 A. L. R. 1022; 26 A. L. R. 541.

Defendant appealed from an order of the district court for Steele county, Senn, J. denying his motion for a new trial. Affirmed.

*George Nordlin,* for appellant.

*Albert F. Pratt,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Harold S. Nelson,* County Attorney, for the state.

TAYLOR, C.

Defendant was convicted of the crime of grand larceny in the first degree and appeals from an order denying a new trial.

Defendant had been engaged in handling dairy products. In the summer and fall of 1926 he was engaged in the illegal sale of intoxicating liquor. Evrouel J. Dee and Jack Welti were also engaged in that business and procured their supplies of liquor from defendant. On the night of November 4, 1926, Dee and Welti broke into a creamery at Havana in Steele county and stole 20 tubs of butter which they placed in defendant's garage in the city of St. Paul and defendant sold and delivered to the Northern Produce Company. Some months later Dee was sentenced and committed to the state prison for another crime, and Welti was sentenced and committed to the state reformatory for stealing the butter. Thereafter defendant was put on trial charged with stealing these 20 tubs of butter on the night of November 4, 1926. Dee and Welti both testified to the effect that a few days prior to this theft defendant proposed to them the project of stealing butter from creameries, to which they assented; that it was agreed between them that Dee and Welti should steal the butter and bring it to defendant, and that defendant would dispose of it and split the proceeds three ways; that defendant suggested the Havana creamery as one from which butter could easily be stolen; that they stole 20 tubs of it from this creamery and placed it in the defendant's garage as

directed by him; and that he sold it and divided the proceeds with them. They further testified to the effect that pursuant to their arrangement with defendant they stole six other lots of butter from other creameries during the following six weeks and delivered these lots to defendant who sold them and obtained the proceeds. If their testimony was true, which was for the jury to determine, defendant is guilty beyond question, for the butter was stolen not only with his knowledge but at his instigation.

Defendant claims that the testimony of Dee and Welti will not sustain a conviction for the reason that they were accomplices and their testimony was not corroborated to the extent required by the statute.

The butter was placed in defendant's garage in St. Paul the same night it was stolen. The next day he caused it to be removed to Minneapolis and placed in the basement of a meat market operated by his brother. Two days later he sold it to the Northern Produce Company. He dealt with Thomas Thoreson, the superintendent of the produce company, whom he had known for several years. He told Thoreson the butter was stolen and paid Thoreson five dollars per tub for handling it. By agreement between them the check for the butter was made out in a fictitious name. Shortly thereafter he sold to Thoreson two other lots of the butter stolen by Dee and Welti. Thoreson accepted these lots but refused to receive any more. Defendant shipped the other lots to Chicago and sold them there. The foregoing facts were admitted by defendant when testifying as a witness. Those relating to his deals with Thoreson were also testified to by Thoreson. Defendant denied the agreement testified to by Dee and Welti, and claimed that he had no knowledge of their intention to steal butter, or that they had stolen any until he found the 20 tubs in his garage on the morning of November 5. He admitted, however, disposing of this lot and the other lots stolen by Dee and Welti knowing they had been stolen. There was also other corroborating evidence which we have not mentioned. We think the corroboration was ample. 2 Dunnell, Minn. Dig. (2 ed.) § 2457, and cases cited.

Defendant contends that the court erred in admitting evidence of the thefts from other creameries. He bases this contention on

the claim that proof of other crimes is inadmissible as a general rule, and that only proof of crimes committed prior to the one in question is admissible in any case. Seven different lots of butter were stolen from creameries by the same persons in the same manner and were disposed of in the same way within a period of about six weeks. The evidence tended to prove that they were a series of acts committed as parts of a prearranged general plan for looting creameries. They were of such a character and so connected that upon a prosecution for any one of these thefts proof of the others, whether committed before or after the particular one in question, was admissible as corroborative evidence. State v. Johnson, supra, p. 543; State v. Monroe, 142 Minn. 394, 172 N. W. 313; State v. Clark, 155 Minn. 117, 192 N. W. 737; State v. Lipman, 163 Minn. 431, 204 N. W. 163; 16 C. J. 591.

When Dee was arrested on the charge of which he was subsequently convicted he called upon defendant to furnish him a bail bond. Thereupon defendant with his attorney went to the attorneys who represented some of the looted creameries and voluntarily gave them his version of his connection with the thefts. His statement was taken down in shorthand. The county attorney was not present and had nothing to do with the taking of this statement but later procured a transcript of it. In cross-examining defendant at the trial the county attorney, using this transcript as a memorandum, asked defendant if at the meeting in the office of the attorneys for the creamery association he had not been asked certain specific questions and made certain specific answers thereto. He admitted making some of the specified answers, denied making some of them, and did not remember as to others. At the conclusion of the cross-examination defendant's counsel asked to have the entire transcript read in evidence. This request was objected to and denied. He then asked for the right to examine the transcript, which was also denied.

These rulings are urged as error, on the ground that when an admission of a party is shown he is entitled to show the entire statement made at the same time. The rule invoked is well established. 2 A. L. R. 1022, note; State v. Kiewel, supra, p. 473. But

it has no application to the facts here presented. The transcript was not made an exhibit, was not incorporated in the record and has not been transmitted to this court, and consequently it cannot be considered. But there was no error in the ruling whatever the transcript may have contained. The county attorney merely used it as a memorandum in framing his questions. He did not have it marked as an exhibit nor offer any part of it in evidence. He asked questions which elicited the fact that defendant had made certain admissions. Defendant had ample opportunity to explain them and to give any exculpatory statements made in connection with them. He makes no claim to the contrary. He was accorded all the rights to which the rule entitled him.

Defendant also challenges several of the rulings sustaining or overruling objections to questions propounded to the witnesses. None of these rulings were of any particular consequence or affected any substantial right of defendant, and all were well within the discretionary power of the court.

Defendant also urges as error that the court refused to give two of his requested instructions to the jury. The subject matter of these instructions was correctly and sufficiently covered by the general charge. The charge was full, fair, clear and correct, and as favorable to defendant as the facts would warrant. He took no exception to the charge and makes no complaint concerning it. He had a fair trial under correct rules of law, and the order denying a new trial must be and is affirmed.

HILTON, J. took no part.