THE STATE v. RICHARD F. RYLAND, Appellant.—25 S. W. (2d) 109.

Division Two, February 19, 1930.

*Russell Garnett, H. C. Waltner* and *Rodman L. Henry* for appellant.

*Stratton Shartel,* Attorney-General, and *Henry Depping,* Assistant Attorney-General, for respondent.

BLAIR, P. J.—Tried for murder, defendant was convicted of manslaughter and sentenced to imprisonment in the State peniten-

tiary for a term of five years for the killing of Joseph Weber at Kansas City on December 14, 1927, and has appealed.

The testimony of deceased's son Karl Weber so clearly made a case for the jury that we think it unnecessary to detail the evidence at any great length. Karl and his deceased father lived at 5309 Forest Avenue in Kansas City. Karl was twenty-four years old and deceased was fifty-seven. Karl's mother died twenty-two years previously. At the age of nine Karl became a cripple. In the basement of the Weber home, a printing shop and advertising business were carried on by Karl; but he claimed that the business belonged to his father.

Appellant was a deputy constable, and went to the Weber home in company with two attorneys named Vance and Jenkins to levy on the stock and machinery of the printing establishment under an execution issued out of the justice of the peace court upon a judgment rendered against Karl for repairing an automobile. When these three men reached the Weber basement shop and announced their purpose, Karl called to the deceased and he came down from the house into the shop. Deceased denied the right of the appellant to levy on the property to pay Karl's debt, asserting that the property belonged to him.

According to Karl's testimony, Vance took hold of some of the material in order to take it under the writ, and deceased jerked it from him. Abusive language was used in connection with the assertions and denials of appellant's right to take the property. Finally appellant said: "Weber, I am going to shoot you." Deceased said, "Go ahead and shoot." Appellant then pointed his revolver at deceased and fired twice in rapid succession. Thereupon deceased rushed upon appellant and forced him down upon a bench. Attorney Jenkins jumped out of a window and attorney Vance went to a door and opened it. While deceased had appellant down on the bench, appellant struck at him with a blackjack. Appellant then got up and he and Vance ran out of the basement through the door Deceased then picked up an ax and followed them around the house.

Karl found his father lying in the back yard near the garage door. He was unable to speak. Karl had previously summoned the police. The officers and an ambulance arrived quickly and removed the deceased to the General Hospital. He lived only about fifteen minutes. The coroner's report and his subsequent testimony showed that the bullet entered deceased's body between the fourth and fifth ribs on his left side and passed through the lower lobe of the left lung, lodging between the tenth and eleventh ribs on the left side near the spine. This wound was the cause of death.

The evidence offered by appellant tended to prove that he was justified in firing the fatal shot in self-defense. Vance testified con-

cerning the purpose of the visit of the three men and concerning the dispute over the right to levy on the printing plant, and then said that he was ready to leave the basement when he heard Jenkins call for help. He then saw deceased going after Jenkins with an ax. Deceased struck at Jenkins and missed him, and Vance asked deceased to put the ax down and he did so. Vance then started to leave, and deceased struck him on the shoulder with the ax and knocked him down and continued striking him. He called upon appellant for help and heard appellant telling deceased to put the ax down. Then he heard a shot. He looked up and saw deceased advancing on appellant with the ax. He said appellant was down on the bench and deceased was over him attempting to strike him with the ax at the time appellant fired the second shot.

Jenkins testified that deceased attempted to hit him with the ax and threatened to kill all three of them. Appellant's testimony was quite similar to that of Vance. He claimed that the first shot was fired to scare deceased and that the second shot was fired to save his own life.

We have stated enough of the evidence to demonstrate that the State made a case for the jury. If the jury had accepted Karl Weber's testimony in its entirety, it would have been authorized to have found appellant guilty of murder. On the other hand, had the jury believed appellant and his witnesses, it should, and doubtless would, have found him not guilty on the ground of necessary self-defense.

Appellant seems to concede this much in his motion for new trial, but contends that, as the evidence offered on the part of the State tended to show that he was guilty of murder and as the evidence offered on the part of appellant tended to show that he shot in self-defense, the jury had no right to return a verdict of guilty of manslaughter, of which he contends there was no evidence. Section 3692, Revised Statutes 1919, settles this point contrary to appellant's contention. That section provides that a defendant found guilty of manslaughter by the jury shall be punished in accordance with the verdict, notwithstanding the evidence shows said defendant to be guilty of the graver crime of murder. [See also State v. Whitsett, 232 Mo. 511, 1. c. 522, 134 S. W. 555, and cases cited; State v. Davis (Mo. Sup.), 12 S. W. (2d) 426, 1. c. 428.]

The brief which we permitted counsel to file after submission of the case makes only three assignments of error. It is first contended that the court erred in permitting the prosecuting attorney to ex-

hibit to the jury and brandish before them the pistol with which appellant shot deceased and to show all the details concerning its size, caliber, loading, etc., because appellant admitted the shooting and pleaded self-defense. No error was committed in admitting the pistol in evidence or showing it to the jury. [State v. Cooper (Mo. Sup.), 259 S. W. 434, l. c. 436.] Even if it was unnecessarily admitted in evidence over counsel's objection and after his concurrent admission of the killing by appellant, we fail to see how the exhibition and admission of the pistol were calculated to prejudice the theory of self-defense or to inflame the minds of the jurors against appellant. The cases cited and relied upon by appellant are all cases where bloody garments of the deceased, calculated to arouse the horror and indignation of the jury, were put in evidence by the state after an admission of the killing by the accused. We think there was no error committed by the trial court under the circumstances appearing in the case at bar.

No reversible error was committed by the court in the cross-examination of Justice of the Peace Waltner which the State was permitted to make. The nature and extent of the cross-examination are largely within the discretion of the trial judge. [State v. Harp, 306 Mo. 428, 267 S. W. 845, and cases.] The interest of the witness was a proper matter for inquiry. The State was not limited to the regularity of the writ of execution upon its face. The cases cited by appellant are those growing out of the action of a constable or other officer in the service of process, where his right to act was measured by the face of the writ. Such cases have no bearing upon the question of the propriety of the cross-examination of Justice of the Peace Waltner which the court permitted the State to make.

The last contention made in appellant's brief is that the court erred in the giving of Instruction 4, because it did not properly define manslaughter, because it did not attempt to define excusable homicide and because it ignored the fact that appellant was an officer charged with the duty of keeping the peace. That part of the instruction which is challenged reads as follows:

"The court instructs the jury that manslaughter is the killing of a human being, not herein declared to be murder or excusable or justifiable homicide; and the court instructs the jury that if you find and believe from the evidence that on the 14th day of December, 1927, at the County of Jackson and State of Missouri, the defendant, Richard F. Ryland, shot and killed the deceased, while in the heat of passion on a reasonable provocation, without malice and without premeditation, as these terms are hereinbefore explained, and under circumstances not constituting justifiable or excusable homicide, as

defined in other instructions, but that the defendant, in a sudden passion, intentionally shot and killed the deceased without malice or premeditation and not in the necessary defense of his person; then the jury should find him guilty of manslaughter.''

Section 3236, Revised Statutes 1919, reads:·

''Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter.''

The killing of Weber was by the act of appellant and not by his procurement or his culpable negligence. The shooting was an intentional act on appellant's part and the only possible issue was whether or not the killing was excusable or justifiable. It could not well be contended that the killing was excusable because there was no evidence tending to show that the homicide was committed ''by accident or misfortune'' under any of the circumstances outlined in Section 3234, Revised Statutes 1919. Hence, there was no reversible error in the court's failure to define ''excusable homicide.'' This failure merely tended to make it possible for the jury to speculate concerning the meaning of the words ''excusable homicide'' and improperly to regard the homicide as an excusable homicide. The failure to define those words, if an error at all under this record, was an error against the State, which might have resulted prejudicially. Appellant certainly is in no position to complain thereof.

As defined by Section 3233, justifiable homicide includes, among others, a killing in self-defense, upon which subject the court gave a separate instruction (of which no complaint is made) and a killing ''in lawfully keeping or preserving the peace.'' The sole defense offered by the appellant was that he shot in self-defense. The State's evidence tended to prove a deliberate killing without any lawful excuse or justification and without sufficient provocation or heat of passion to reduce the homicide to manslaughter and that appellant was the aggressor and was not in the exercise of his duty to keep the peace. Appellant's evidence was that deceased attacked him, after previously having attacked the two attorneys who went with him, and that he shot deceased in order to protect his own life. His evidence tended to justify his act under the first subdivision thereof. The most that appellant's evidence tended to prove was that he fired the fatal shot to protect the life or limb of himself and Jenkins and Vance.

There was no evidence from which the jury could have found that appellant shot deceased while he was performing that part of his duty requiring him to keep or preserve the peace. Any disturbance of the peace on deceased's part, except the wrangling over appellant's right to make the levy, occurred in connection with the al-

leged assault of deceased upon appellant, whereby appellant's life or limb was in danger and in resistance of which he claimed to have fired the fatal shot. We are unable to see any reason why the court was required, in compliance with its duty under Section 4025, Revised Statutes 1919, to instruct the jury upon the law in relation to the justification of an officer in killing a human being "in lawfully keeping or preserving the peace."

The case of State v. Peters (Mo. Sup.), 242 S. W. 894, cited by the appellant, was a conviction of the defendant for shooting an officer seeking to arrest him for disturbing the peace. The duty of the officer there considered was in its relation to the defense of self-defense offered by the defendant. The case is not in point on the facts at bar. The same situation appears in State v. Fuller, 96 Mo. 165, 9 S. W. 583, cited by appellant.

In State v. Dierberger, 96 Mo. 666, 10 S. W. 168, the defendant was an officer who was attempting to arrest the deceased and another for a misdemeanor committed in his presence. The question there presented was whether the defendant used unnecessary force in making the arrest and the effect upon the presumption of murder in the second degree arising from a killing by the intentional use of a deadly weapon at a vital part of the body, where the killing is done by an officer in making an arrest. The case is not in point here.

The criticism that Instruction 4 does not properly define manslaughter generally is without merit. It defines it in the language of Section 3236, Revised Statutes 1919, and is sufficient. It is in almost the same language as an instruction on manslaughter approved in State v. Gore (Mo. Sup.), 237 S. W. 993, l. c. 996. The trial court did not commit error in following the instruction held sufficient in the Gore case.

Numerous assignments of error were made in the motion for new trial, which able counsel have not seen fit to urge in their brief. We have carefully considered each and every one of such assignments and find them to be without substantial merit. Our examination discloses that the information, verdict and judgment are in proper and approved form.

The judgment of the trial court is affirmed. *White, J.,* concurs; *Walker, J.,* absent.