the court erred in sustaining defendant's motion to dismiss.

The judgment is reversed and cause remanded.

.VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

. All concur.

**STATE of Missouri, Respondent,**

v.

**Ruby Lee LAWSON, Appellant.**

**No. 44923.**

Supreme Court of Missouri.

Division No. 1.

May 14, 1956.

Morris A. Shenker, Mark M. Hennelly, Sidney M. Glazer, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Appellant, Ruby Lee Lawson, hereafter referred to as the defendant, was found guilty of manslaughter and her punishment assessed at imprisonment in the penitentiary for a term of two years. From the ensuing judgment and sentence she has appealed.

Defendant does not question the sufficiency of the evidence and hence we will limit our statement to such facts as are necessary to an understanding of the issues presented.

The deceased, Tyree Lawson, and defendant were not married but had lived together as husband and wife for four or five years. It appears that decedent died at about 4:30 p. m. on October 4, 1953, as the result of a stab wound in his back which had been inflicted by defendant about two hours earlier. The Lawsons lived at 1380 Shawmut in St. Louis, Missouri. The fatal incident, however, occurred at a Negro rooming house on Lotus Street. Tyree had frequently gone to this place to visit defendant's brother, Eddie Nichols, who, with his wife, occupied an apartment on the second floor thereof. In this manner he had become acquainted with Odessa Williams who occupied a room across the hall from Eddie and Tereace Nichols and shared a kitchen with them. On the night before the casualty, Tyree met Tereace, Odessa, and two other women from the rooming house at a dance and shared a table with them. He drove Odessa home from the dance. Upon arrival at the Lotus Street address it appears from conflicting testimony that he either spent several hours visiting in the Nichols apartment or went out with Eddie for the remainder of the night.

Eddie and Tyree spent much of the next day together. At about 11:30 a. m., they went to the Lawson home and began watching a ball game on television. Shortly thereafter Eddie received a telephone call requesting that he return home and drive a friend to East St. Louis. Tyree went home with him but stayed there while Eddie made the trip to East St. Louis.

An idea of the events occurring after Eddie and Tyree left the Lawson home may be obtained from the testimony of Officer Bass as he related the oral confession of defendant, as follows: "She said she waited a while—oh, maybe an hour and a half, two or three hours, she wasn't certain, and she says she got tired and she said to herself, 'I'm going over there.' She got herself ready, went into the kitchen and got a knife and put it in her pocketbook and walked up Ridge to Easton, took the Wellston Avenue car, eastbound, and got off at Kingshighway and walked north on Kingshighway to Lotus and then walked east on Lotus to 4957, which is about five or six houses east of Kingshighway on the north side of Lotus;

and she rang the doorbell and Mrs. Northcross is the woman who admitted her. She said, 'Is Tyree here?' and Mrs. Northcross answered, 'Yes, he is upstairs,' and she went upstairs and saw Tyree standing in the hall near a room right up from the steps, kissing Odessa, and she pulled out the knife and stabbed him. She said she didn't know if she dropped the knife or not."

The testimony of defendant at the trial was that after she discovered Tyree kissing Odessa, he struck and choked her and in the ensuing struggle he, in some manner, received the stab wound. At about this time Eddie came into the hallway. He testified that he grabbed defendant's arm and made her drop the knife. Immediately thereafter Eddie assisted deceased to his car and drove him to a hospital where, as stated, he died about two hours later. Defendant went with them to the hospital where she was arrested shortly after arrival. After these three left the house, Tereace picked up the knife, washed the blood off of it and delivered it to the police when they came to the rooming house later that day in the course of their investigation.

 Defendant assigns error in the giving of Instructions Nos. 2 and 3. Counsel for the State has pointed out that the transcript fails to disclose that defendant objected to the giving of these instructions at the time they were given and read to the jury. In this situation these alleged errors are not before us for review. We see no occasion for an extended discussion of the question as the matter was before this court in the very recent case of State v. Rush, Mo.Sup., 286 S.W.2d 767. In that case we held that alleged errors in the instructions were not reviewable in criminal cases where the record fails to show that the defendant objected to the giving of the instructions. In her reply brief defendant contends that the decision in the Rush case is incorrect and we are asked to re-examine the question and to overrule that decision. In compliance with this request, we have studied the cases, rules, and statutes cited in the reply brief, as well as those discussed in the

Rush case, and have concluded that the Rush case is sound and should be followed.

 Defendant argues, however, that the foregoing rule should not be applied in this case because the record does not disclose that counsel for defendant had an opportunity to examine the instructions and make his objections. It is true that Section 510.300 RSMo 1949, V.A.M.S., provides that "the court shall afford ample opportunity for counsel to examine the instructions before the same are given and to make objections out of the hearing of the jury." The record in this case is silent as to whether counsel for defendant was or was not afforded the required opportunity. In this situation it will be presumed that the trial court complied with the mandate of the statute. Right action on the part of the trial court is presumed in the absence of a showing that its rulings or actions were incorrect. State v. Anderson, Mo.Sup., 254 S.W.2d 638. If counsel for defendant did not feel that he had been given a reasonable opportunity to examine the instructions, he should have called the matter to the attention of the trial court and requested additional time for that purpose. Since counsel for defendant has failed to present any proof to indicate that he was not given ample opportunity to examine the instructions, and the record does not show any objection to the alleged failure of the trial court to grant such time, this contention must be ruled against defendant.

The remaining point briefed by defendant is the alleged error of the trial court in overruling her motions for a mistrial arising out of two trial incidents. The first developed during the redirect examination of Katie Mae Northcross. It appeared that this witness had testified to certain statements and acts of defendant at or shortly after the fatal occurrence which other witnesses present had not (according to their testimony at the trial) seen or heard. Counsel for defendant had asked her on cross-examination if she knew of any reason why no one else had seen or heard these things and she answered in the negative. Thereafter, counsel for the State

asked her if she cared to change that answer and if she did know of any reason why the others did not see or hear these things. Objection to the question being overruled, she stated that in a telephone call "they tried to win my influence—couldn't I have some of the witnesses in the house to change their statements." In answer to the next question (by the court) Mrs. Northcross stated that these witnesses had changed their statements from those given in the Coroner's office. Thereafter, the following objection and rulings appear: "Mr. Hennelly: I think we are getting far, far afield. I ask that the whole thing be stricken, the jury instructed to disregard it and a mistrial be declared. The Court: You may disregard it all, ladies and gentlemen. Mr. Hennelly: What is Your Honor's ruling with reference to the mistrial? The Court: Overruled the request for a mistrial."

■ We have carefully considered this incident and while we consider it an unfortunate occurrence, we have concluded that it did not constitute reversible error. In the first place, we have given consideration to the fact that defendant opened up the subject and it seemed to be the desire of the witness to correct or change an answer to a question asked on cross-examination. Moreover, we think that, under the particular circumstances of this case, any error that developed in this examination was cured by the instruction of the court to the jury to *disregard it all.*

The next episode complained of occurred on the fifth day of the trial when Eddie Nichols was recalled by the State for rebuttal testimony. During the trial defendant had sought, by innuendo, to infer that Eddie may have stabbed the deceased. In connection with this rebuttal testimony, defendant's counsel brought out that Eddie had spent four or five days in jail, leaving the impression that he was arrested in connection with the homicide. Counsel for the State then asked the following question: "As a matter of fact, you were placed in jail for going out there with a fellow [by the] name of Chappy and your sister and

you tried to get some of the witnesses to change their statements?" This question was never answered. However, there immediately developed a colloquy between the attorneys in which each appeared to become angry and, in rather strong language, questioned the fairness of his opponent. It was in this setting that the Assistant Circuit Attorney stated that defendant's attorney was trying to leave an erroneous impression that the witness was arrested in connection with the case when he well knew "the witness along with * * * went out there offering dresses and money to various witnesses to change their statements."

Defendant contends that the combined effect of the foregoing question and the statement of the Assistant Circuit Attorney was prejudicial and hence the court erred in overruling her motion for a mistrial which was the only action she had requested.

■ While the precise question asked would appear to be improper, it would seem that, in view of the foregoing examination by counsel for defendant, it would have been proper to prove that the witness had not been arrested upon the charge of killing the deceased. Moreover, as stated, the question was never answered. Under these circumstances, we hold that the fact that the question was propounded to the witness would not be reversible error.

■ In regard to the statement of counsel heretofore described, we think it proper to observe that it was retaliatory in nature and occurred during a heated exchange of charges by the attorneys. Under such circumstances, we think the trial court was in a particularly advantageous position to observe and evaluate the prejudice to defendant, if any, that may have resulted therefrom. That court refused to grant a mistrial. The ruling was one which rested largely in the discretion of the trial court. State v. Lorts, Mo.Sup., 269 S.W.2d 88. We find no indication in the record that the trial court abused its discretion in this respect and we accordingly defer to its ruling.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial or presented in the brief discloses no error. We have concluded that the defendant was afforded a fair trial and that the judgment should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.