STATE of Missouri, Respondent,

v.

Rachel KELTON, Appellant.

No. 45580.

Supreme Court of Missouri,

Division No. 2.

March 11, 1957.

494

Coyne & Patten, Joplin, for appellant.

John M. Dalton, Atty. Gen., John W. Inglish, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant was charged and tried in the Circuit Court of Jasper County, Missouri, on an information charging her with murder in the first degree in the killing of her husband. She was convicted of manslaughter and her punishment was assessed by the jury at eight years in the penitentiary. She filed a motion for new trial which was overruled and she has appealed to this court from her judgment of conviction.

Since the defendant does not question the sufficiency of the evidence to support the conviction, an outline of the facts will be sufficient for an understanding of the questions presented for review. Rachel Kelton, the defendant, 50 years old, and a former resident of Texas, was married to William Odes Kelton, age 57 and a resident of Joplin, on September 8, 1955. They lived together at 2521 Bird, in Joplin, until October 9, 1955, when the defendant killed her husband by shooting him with a .38 caliber Colt Cobra revolver. No one was present at the time of the killing except the defendant and her husband. Much of the state's evidence consists of admissions by defendant orally and in a written statement.

In substance, the defendant testified that a minister had invited the defendant and her husband to attend church services on Sunday, October 9, 1955. That morning her husband took a drink of whiskey before breakfast and after breakfast he started drinking again until, according to her testimony, he was not in condition to go to church. She estimated he had drunk at least a pint and a half. Nothing further was said about going to church, but late in the morning she asked her husband whether he was the real father of his sister-in-law's child. It seems that on occasions he had given or loaned money to the child's mother. The question made the husband very angry and he threatened to leave her. He began packing some clothes and soon reappeared in the kitchen with a suitcase in his hand. She went over to him and asked him not to leave. He set the suitcase down and she thought he was going to take her in his arms, but instead he hit her on the left side of the head and knocked her against a cabinet. He threatened to kill her, kicked her three times and said he was going to "tear her apart." When she got loose from him she went from the kitchen into and through the living room and into a bedroom where she got her gun from under the bed. She then went back into the living room and when she got there her husband had gone back into the kitchen. When he saw her he turned and came back toward her. He again said he was going to kill her and said he wasn't afraid of the gun. She raised the gun and fired two shots, one of which struck him in the left chest. He said, "Rachel, you shot me," and put his hand on his shoulder. Defendant then went back into the bedroom, wrapped the gun in a handkerchief and put it in a dresser drawer. She then went to look for her husband and found him dead on the bathroom floor. She dialed the telephone operator and asked her to call an ambulance and the police. She testified she was in fear of her life and that she killed her husband in self-defense.

The state's evidence, however, tended to show that William Odes Kelton was not intoxicated, that he did slap his wife but thereafter she had an opportunity to retreat and escape, but that she was angered and shot him with murderous intent. The analysis of a specimen of the blood of the deceased showed alcohol concentration of .03 of one per cent. A concentration up to .05 of one per cent has no perceptible effect on an individual. There was an outside door in the living room and also one in the bedroom through which she could have retreated and escaped while she was on the way to get her gun. State's evidence also tended to prove that William Odes Kelton had made no attack on his wife other than to slap or strike her on the side of the face subsequent to her accusation that he was the father of his sister-in-law's child.

■ The state has filed a brief, but since the defendant has not we will examine the defendant's motion for new trial for assignments of error sufficiently preserving questions for review. 42 V.A.M.S. Supreme Court Rule 27.20.

■ The first ground of the motion is: "The verdict in this cause is against the evidence, against the weight of the evidence and against the law under the evidence." This has been held to be too general to preserve anything for review. State v. Thomas, Mo., 82 S.W.2d 885, 887 [1]. We adhere to that ruling.

A specimen of blood purporting to have been taken from the victim shortly after his death and examined in the laboratory of the State Highway Patrol for alcohol concentration was admitted in evidence over defendant's objection that the specimen had not been sufficiently identified. This is the basis of the second assignment.

Dr. Donald R. Patterson, a Joplin physician, testified that he took a blood sample from the body of the deceased, William Odes Kelton, and delivered it to Lieuten-

ant Clifford Hill, a member of the Joplin Police Department. Lieutenant Hill testified that he received the sample from Dr. Patterson and sent it by United States mail to the Missouri State Patrol Technical Laboratory at Jefferson City. Lieutenant John F. Williams, in charge of the laboratories of the Highway Patrol, testified that he received the mailing tube containing a small bottle of blood marked Plaintiff's Exhibit 20. The exhibit so marked was received in the United States mail, was postmarked from Joplin and the notation accompanying it indicated it came from the Joplin Police Department. Lieutenant Williams, without objection, answered in the affirmative the state's question: "Now is this the sample of blood you tested and have testified to as coming from William Odes Kelton?"

■ The blood specimen had been taken with defendant's knowledge and consent. While the proof of identity sagged a bit in one or two places, we deem the chain to be complete. The exhibit was sufficiently identified and the trial court did not err in overruling the defendant's objection.

■ The third specification in the motion for new trial is: "That the Court erred in permitting the State to interrogate the defendant about matter which were not inquired into on direct examination." An examination of the transcript of defendant's testimony discloses no basis for the claim of error. In most instances objections on this ground were sustained or the question was withdrawn. In the remaining cases the court's rulings were obviously correct. Moreover, the assignment is hardly specific enough to preserve anything for review. State v. Maples, Mo., 96 S.W.2d 26, 29 [9].

■■ Next, defendant complains of the court's refusal to discharge the jury because the prosecuting attorney, in his closing argument, referred to the defendant as a "multi-married pistol-packin' momma."

The evidence tended to show that the defendant had been married four times. Defendant's counsel objected to the prosecuting attorney calling her a "maudling, pistol packing momma" and asked that the prosecuting attorney be reprimanded and that the jury be discharged. The court ruled that "pistol-packing momma" was an improper remark and he instructed the jury to disregard it. The motion to discharge the jury was denied. Granting a mistrial because of misconduct of attorneys, such as intemperate oral argument, rests to a large extent within the discretion of the trial court. State v. Eison, Mo., 271 S.W.2d 571, 572 [2]. We find nothing in the record that indicates an abuse of discretion. The assignment is disallowed.

Specification No. 5 is: "That the Court erred in not ordering the prosecuting attorney to produce the sworn question and answer statement taken by the prosecuting attorney on the day of the fatal accident." A similar assignment was held to be too general to preserve anything for review in State v. Maples, Mo., 96 S.W.2d 26, 29 [11]. However, this subject matter will be touched upon further in considering the more definitive specifications in the next two assignments.

Dorothy Sanders, on behalf of the prosecuting attorney, reported in question and answer form the interrogation of the defendant on the afternoon of October 9. The original of the transcription was delivered to the prosecuting attorney and the reporter retained in her files the two remaining copies. This memorandum of the interview was not signed by the defendant and there was no showing that she was asked to sign it, although she did sign for the police another statement which was introduced into evidence.

The first reference to the written memorandum was during the cross-examination of Deputy Sheriff Frank Harris when defense counsel brought out that the interrogation was taken in shorthand by Mrs.

Sanders. Thereafter, during interrogation by the prosecuting attorney, the defendant objected to the witness relating what he had heard the defendant say on the ground that the written transcript would be the best evidence. The court ruled then "any eye witness can testify as to what they themselves heard." Defense counsel also requested the statement be produced for examination by defense counsel. The court ruled that defense counsel could see the portion relevant to the question being asked by the state. The defendant issued a subpoena duces tecum directed to the shorthand reporter to produce in evidence "a transcript of the questions and answers" taken at defendant's interrogation on October 9. On motion of the state the subpoena was quashed.

In specification 6 of the motion for new trial the defendant asserts: "That the Court erred in permitting the prosecuting attorney to interrogate the defendant about the sworn question and answer statement taken by him without having first produced and introduced into court the said sworn statement; and permitted the prosecuting attorney to pick out questions and answers piecemeal from said question and answer statement and propound said questions to the defendant and officers who were witnesses in the trial." Specification 7 charges that the trial court erred in quashing the subpoena duces tecum.

■ An examination of the transcript fails to disclose that the transcript of the questions and answers was sworn to or even signed by the defendant. The transcript of the questions and answers was not offered in evidence in whole or in part, nor was it used to refresh the memory of the witnesses. The prosecuting attorney had the right to use the transcript as a memorandum in framing his questions. State v. Maples, Mo., 96 S.W.2d 26, 30 [16]; State v. Oelschlegel, 173 Minn. 598, 218 N.W. 117, 118 [3]. Defendant had ample opportunity to explain her answers and the circumstances under which they

were made and to testify to any exculpatory matters.

■ Assuming, without deciding, that defendant would have the benefit of Section 510.030 RSMo 1949, V.A.M.S., pertaining to the production of documents and papers in civil cases, she did not bring herself within the terms of the statute. The application was oral and there is no showing that the written statement contained evidence material to the merits or defense of the action. "A mere suspicion that it contains such evidence does not warrant an order for its production." State ex rel. Page v. Terte, 324 Mo. 925, 25 S. W.2d 459, 462 [2, 3]. The production of books and papers under the statute "is not authorized upon the possibility of the impeachment of witnesses or for prying into an adversary's preparation for trial." State v. McDonald, 342 Mo. 998, 119 S.W. 2d 286, 289 [6]. The trial court did not err in refusing to require the production of the transcript and to permit its examination by the defendant under the circumstances shown in this record. State v. Hancock, 340 Mo. 918, 104 S.W.2d 241, 246 [9]; State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 344 [20].

■ Supreme Court Rule 25.19, authorizing the issuance of subpoenas duces tecum, is not intended as a rule of discovery; its purpose, rather, is to enforce the production of documents and papers that contain evidence that is relevant and material to the issues. State ex rel. Phelps v. McQueen, Mo., 296 S.W.2d 85, 89 [1]. On this record the court did not err in quashing the subpoena on motion of the state.

■ Next, defendant alleges that the court erred "in not declaring a new trial of its own motion," because one juror was not present "when the strikes were made and was not present when the list of chosen jurors was called, and the Court was compelled to wait for over an hour until said juror was found." The record does not

support the factual contention. It merely shows that the jurors were excused subject to recall after the panel had been examined on voir dire. The next entry in the record is a statement by the court that one juror had not returned on time, that he had probably misunderstood the court's instructions and the other prospective jurors would have to wait until the missing one returned. The next entry is that the jury was sworn. The defendant made no objection to the proceedings at the time and the court was not required to grant a mistrial or a new trial of its own motion under these facts. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 104 [9].

 The defendant also contends that the court erred in giving a manslaughter instruction in that there was no evidence which would justify the giving of the instruction. It is quite evident that the matter has not been preserved for review, because no objection was made at the time of trial. State v. Lawson, Mo., 290 S.W.2d 84, 86 [1]; State v. Rush, Mo., 286 S.W.2d 767, 772 [7]. However, it appears from the record that the court was not only justified in giving the instruction but was required to do so. Section 546.070(4), RSMo 1949, V.A.M.S.; State v. Wright, 352 Mo. 66, 175 S.W.2d 866, 872 [10].

There is a further specification that the information does not charge the defendant with first degree murder or any other crime under the laws of the state. We find that the information sufficiently charges murder in the first degree and includes the offense of manslaughter of which defendant was convicted. Sections 559.010 and 559.070 RSMo 1949, V.A.M.S.; Supreme Court Rule 27.01(c); State v. Carel, Mo., 69 S.W.2d 296, 297 [3]; State v. Wright, 352 Mo. 66, 175 S.W.2d 866, 872 [10]. The conviction of manslaughter is authorized where the charge is murder in the first degree. Section 556.220; State v. Ryland, 324 Mo. 714, 25 S.W.2d 109, 111 [1]. The verdict is proper in form and

substance. The punishment is within the limits fixed by statute. Section 559.140. Allocution was granted. The judgment is in proper form and sentence was duly imposed.

The defendant was fairly tried and, no error being shown, the judgment is affirmed.

All concur.