STATE of Missouri, Plaintiff-Respondent,

v.

Robert Faye ADAMS, Defendant-Appellant.

No. 9731.

Missouri Court of Appeals, Springfield District.

Jan. 12, 1976.

Motion for Rehearing or Transfer Denied Feb. 2, 1976.

W. Newell Toalson, Springfield, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

Defendant Robert Faye Adams was found guilty of willful failure to appear in court (bond jumping) as defined and denounced by § 544.665, RSMo Supp.1973.[1] His punishment was assessed at imprisonment for a term of five years and he appeals.

Accused of slaying his wife, Adams was convicted of murder in the second degree, on February 20, 1971, after trial to a jury in the Circuit Court of Greene County. His punishment for this offense was fixed at imprisonment for a term of 40 years. On April 6, 1971, Adams filed a notice of appeal and the amount of his bond on appeal was set at $25,000. On April 9, 1971, defendant and five personal sureties executed a supersedeas bond, and defendant was thereupon enlarged.

Defendant resumed his business activities, and at least until June 23, 1973, maintained contact with his bondsmen as mutually arranged. Defendant normally traveled a good deal, and during the two-year period from April 1971 to April 1973 he made trips to Mexico and Central America, keeping his bondsmen informed of his whereabouts.

In April 1973 Adams returned to his home in Springfield. The State's evidence

---

1. References to statutes and rules are to RSMo Supp.1973, V.A.M.S. and V.A.M.R., unless otherwise noted.

was that he expected to have to "go and serve his time", and he therefore began to liquidate his business. The defendant's testimony was that he started closing out his business because, "I just didn't have the money to have a [business] high in accounts receivable and be relatively close to a decision." He decided to tour the western states and in May 1973 left Springfield to go to Colorado, Arizona and New Mexico. While he was in Arizona in June 1973, defendant met a young German woman, Friederike Myer. Without informing his bondsmen of his intention to be married or to travel overseas, and without advising his prospective bride of his conviction, Adams married Miss Myer and in early July 1973 accompanied her to her parents' home in a remote village in the German Federal Republic. Prior to June 28, 1973, defendant had always furnished his bondsmen some means of locating him; after his marriage and while he was in Germany he severed all communication.

On July 16, 1973, our Supreme Court affirmed Adams' conviction of second-degree murder. *State v. Adams*, 497 S.W.2d 147 (Mo.1973). Because Adams' whereabouts were unknown, the mandate of that court could not be executed, forfeiture of the appeal bond was ordered and a capias warrant issued.

Defendant's bondsmen began trying to locate him. The State's evidence was that the bondsmen had 500 posters printed in Spanish and English which were circulated among state and local police forces of all the major cities of Mexico, Central and South America. Another 500 posters were printed in English and were circulated in most of the major cities west of the Mississippi. The distribution of posters produced no response. The bondsmen finally enlisted the cooperation of the Federal Bureau of Investigation, and on November 9, 1973, Adams was apprehended at O'Hare Airport in Chicago as he debarked a return flight from Europe.

Section 544.665, which defines the offense of willfully failing to appear, or "bond jumping", reads in pertinent part as follows:

"1. In addition to the forfeiture of any security which was given or pledged for his release, any person who, having been released pursuant to sections 544.040 to 544.665, or upon a recognizance or bond pursuant to any other provisions of law, willfully fails to appear before any court or judicial officer as required shall be guilty of an offense and punished as follows:

(1) If arrested for or charged with a felony, by a fine of not more than five thousand dollars or imprisoned [sic] for not more than five years;"

■ This statute is relatively new; it was enacted in 1972 as part of an act designed, among other things, to modify and liberalize bail and release procedures in criminal cases. Laws of Mo.1972, p. 1027. Although our research has not disclosed the prototype of § 544.665, our examination of comparable statutes leads us to believe that present §§ 544.455 and 544.665 are similar in intent to §§ 3146, 3150 and 3151 of the Federal Bail Reform Act of 1966, now codified as 18 U.S.C. §§ 3146, 3150 and 3151. See 1966 U.S.Code Cong. & Admin.News, pp. 2305–2306. We therefore consider the federal decisions construing and applying 18 U.S.C. §§ 3146 and 3150 persuasive, though not controlling, in this case. Cf. *Cooper v. Finke*, 376 S.W.2d 225, 228[1] (Mo.1964).

In this court the defendant questions the sufficiency of the evidence in several respects. In particular, he argues that the State did not demonstrate that he "willfully" failed to appear because the evidence does not indicate that he acted with a deliberate purpose to avoid appearing when he was required to do so.

■ The term "willful" as used in criminal statutes simply means intentional. *State v. Marston*, 479 S.W.2d 481, 483–484[2, 3] (Mo.1972); *State v. Baumann*, 311 Mo. 443, 450, 278 S.W. 974, 976[4] (1925). The evidence that defendant purposely dis-

obeyed or disregarded the law is circumstantial, but willfulness can seldom be directly proved, *United States v. Wetzel,* 514 F.2d 175, 177–178[3] (8th Cir. 1975), and every legitimate inference favorable to the verdict must be indulged by this court. *State v. Kays,* 492 S.W.2d 752, 758[1] (Mo. 1973); *State v. Burton,* 357 S.W.2d 927, 930[2] (Mo.1962); *State v. Brown,* 291 S.W.2d 615, 620[9] (Mo.1956). No single fact or circumstance shown here conclusively proves defendant's guilt, but his course of conduct after he began to liquidate his business, anticipating an unfavorable decision on appeal, is entirely consistent with a deliberate design to avoid the command of the law. Construed most favorably to the result reached, the evidence supports the judgment of conviction.

Another point for discussion is defendant Adams' assertion that his conviction cannot stand because he received no written notice that he was required to appear, nor any warning of the consequences of his failure to do so.

■ We agree that a fair reading of § 544.665 implies that a defendant released on bond will be given a reasonable notice that he is required to appear, and, since January 1, 1973, Rules 28.11 and 28.12 have prescribed procedures designed to afford such notice. It is quite another thing to say, in this factual situation, that Adams' conviction must be reversed because he received no written notice that his appearance was required. Having chosen to become a fugitive from justice, the defendant is now in no position to complain that a wholly unavailing act should have been performed by the trial court, and the want of specific notice on his part does not vitiate the conviction. *United States v. Cohen,* 450 F.2d 1019, 1021[2] (5th Cir. 1971); *United States v. DePugh,* 434 F.2d 548, 551–552[2, 3] (8th Cir. 1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971).

■ Defendant's claim that he should have been warned of the consequences of his failure to appear is repeated several times in his brief and reflects his understanding that present § 544.665 incorporates § 544.455, and that the warning provided for in § 544.455, para. 3, is a precondition to prosecution under § 544.665. We do not agree.

Section 544.455 authorizes the conditional release of defendants charged with bailable offenses; the language and import of the statute are similar to 18 U.S.C. § 3146. In particular, § 544.455, para. 3 provides:

"A magistrate or judge authorizing the release of a person *under this section* (our emphasis) shall issue an appropriate order containing a statement of the conditions imposed [upon the defendant's release], if any, [and] shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that a warrant for his arrest will be issued immediately upon any such violation."

■ For several reasons, the "warning" provision has no application here. Adams was not released conditionally pursuant to § 544.455; his liberty, pending the outcome of his appeal, was in no way restricted. As we read the statute, the order and warning provisions are applicable only to criminal defendants released subject to the restrictions enumerated in § 544.455, which had not been enacted when Adams was enlarged. Moreover, the argument advanced by the defendant has been carefully considered in connection with the federal statutes and rejected. The warning provided for by § 544.455, para. 3, is intended to deter violation of the conditions imposed, but it is in no sense a condition precedent to prosecution under § 544.665, nor is the State required to prove that a warning was given and disregarded. *United States v. DePugh,* supra, 434 F.2d at 552–553.

Complaint is made of Instruction No. 4, the State's main or verdict-directing instruction. In form, the instruction is unexceptionable; it is carefully patterned upon the verdict-directors promulgated for use in criminal cases pursuant to Rule 20.01, and

the requirements of Rule 20.02(d) have been fully satisfied. In substance, Instruction No. 4 requires the jury to find beyond a reasonable doubt that Adams, on a specified day, while enlarged on bond, willfully failed to appear before the Greene County Circuit Court when required. The instruction recites the conversive "tail" found in all MAI–CR verdict-directors. As for punishment, the jury is instructed that if it finds defendant guilty, it will fix his punishment a) at "imprisonment . . . for a term fixed by [the jury], but not less than two years nor more than five years", or b) by "a fine fixed by [the jury], but not more than $5,000."

Here, the defendant argues that the jury should have been required to find that the defendant was released on bond, conditioned that he appear to obey every order of the court as ordered, that he willfully failed to appear, and that the jury should have been told that "willful" means committed voluntarily, with the purpose of avoiding the law and not by accident, mistake or in good faith.

■■■ There is no merit in these arguments. Instruction No. 4 defined the offense charged in the language of the statute creating the offense. In this jurisdiction it is ordinarily proper and sufficient to hypothesize the elements of a statutory offense in the language of the statute;[2] moreover, the conditions of defendant's appeal bond were matters of law for the court, and it would have been improper to submit the interpretation of the bond as a matter of fact for the jury. Cf. *State v. Brown,* 171 Mo. 477, 488, 71 S.W. 1031, 1034 (1903). As for the defendant's contention that he was prejudiced by the trial court's failure to define the word "willful", we find that in Instruction No. 5, the trial court advised the jury that the term "willfully",

as used in the instructions, meant intentionally, and not accidentally. This is a correct definition of the term, *State v. Marston,* supra, 479 S.W.2d at 483–484[2, 3]; *State v. Baumann,* supra, 311 Mo. at 450, 278 S.W. at 976[4], the instructions must be considered as a unitary charge, *State v. Prigett,* 470 S.W.2d 459, 461–462[2] (Mo.1971); *State v. Gailes,* 428 S.W.2d 555, 559[6] (Mo. 1968), and when the instructions are so considered, it becomes obvious that defendant's point is without merit.

■■■ A further complaint is that the trial court did not follow the statute in advising the jury of the range of punishment which might be assessed, because the jury was told that if it found defendant guilty, it might assess his punishment at imprisonment in a correctional institution for a term not less than two nor more than five years. Such instruction was erroneous, defendant says, because the statute fixes no minimum punishment. In support of this contention defendant has cited us to *State ex rel. May Department Stores Co. v. Weinstein,* 395 S.W.2d 525 (Mo.App.1965), which holds that statutes must be construed as they are written, and *State v. Hurt,* 285 S.W. 976[2] (Mo.1926), which holds that an instruction which overstates the minimum punishment prescribed by law is erroneous. We agree that in criminal cases the jury must be fully advised of the range of punishment which may be assessed, but we find no error in this case.

■■■ Adams had been convicted of a felony and § 544.665, para. 1(1), quoted above, was applicable. Again, giving the statute a fair reading, it is obvious that the General Assembly intended to make bond jumping a "mixed" or graded felony when the defendant stands accused or convicted of a felony.

The fact that a jury could have assessed only a fine in this case does not reduce the

2. *State v. Bennett,* 87 S.W.2d 159, 163[9] (Mo.1935) (manslaughter); *State v. Ryland,* 324 Mo. 714, 721, 25 S.W.2d 109, 112[7] (1930) (manslaughter); *State v. Frank,* 103 Mo. 120, 125, 15 S.W. 330, 331 (1891); *State v. Miller,* 93 Mo. 263, 269, 6 S.W. 57, 60

(1887) ("At all events, instructions . . . are sufficiently correct which set forth all the facts necessary to constitute the offense, as defined in the statute."); see also 23A C.J.S. *Criminal Law* § 1194, p. 496 (1961).

offense charged to a misdemeanor. *State v. Plassard,* 355 Mo. 90, 92–93, 195 S.W.2d 495, 496[1] (banc 1946); *State v. Combs,* 301 S.W.2d 529[2] (Mo.App.1957). Since 1835, § 546.490, RSMo 1969, has been taken to prescribe a minimum sentence of two years for statutory felonies when no minimum term is stated. *State v. Crouch,* 316 S.W.2d 553, 554–556[3] (Mo.1958). Therefore, and contrary to defendant's position, the trial court was obliged to advise the jury that the minimum term of imprisonment which could be assessed was two years. Rule 26.-02, para. (6); *State v. Carlson,* 325 Mo. 698, 702, 29 S.W.2d 135, 137[2, 3] (1930); *State v. Griffin,* 320 Mo. 288, 295, 6 S.W.2d 866, 868[6] (1928); *State v. Scholl,* 130 Mo. 396, 399, 32 S.W. 968, 969 (1895).

Another assignment of error is that the trial court erred in denying Adams' motion to dismiss the information and in denying his motion for judgment of acquittal because § 544.665 had not been enacted when the bond was executed. Defendant's position, as we understand his brief, is that as to him, § 544.665 is an ex post facto law in violation of U.S.Const. art. I, § 10, cl. 1. In this connection he repeats his argument that he should have received a warning of the consequences of his failure to appear.

Neither the motion to dismiss the information nor the motion for judgment of acquittal mentions ex post facto laws; we doubt that any constitutional issue is preserved for review. *State v. Smith,* 310 S.W.2d 845, 850–851[6] (Mo.1958). Assuming, however, that error of constitutional dimension known before trial can be assigned for the first time in a motion for new trial, defendant's point is groundless. A criminal statute is an ex post facto law if it denounces as a crime an act or acts which were innocent when committed or changes the penalties to be imposed for criminal violations after the date of the violation. *State ex rel. Jones v. Nolte,* 350 Mo. 271, 284, 165 S.W.2d 632, 638[15] (banc 1942). Section 544.665 was enacted at the Second Regular Session of the 76th General Assembly and became effective August 13, 1972.

Laws of Mo.1971–1972, p. 1063. Adams' failure to appear occurred on August 17, 1973, more than a year after § 544.665 had become law. The conduct for which the defendant was punished was criminal when it was committed, and § 544.665 operated neither ex post facto nor retrospectively in this case.

A final point urged is that the trial court erred in permitting one of the bondsmen to testify concerning his efforts and the efforts of other bondsmen to locate the defendant when he failed to appear. The objection made was that such evidence was "irrelevant and prejudicial". We cannot agree. The testimony received by the trial court tended to establish that defendant's failure to appear was deliberate and willful, the result of a plan or design to evade incarceration. We consider it relevant and hold there was no error in permitting Mr. Anderson, the bondsman, to testify as he did. Cf. *State v. Musick,* 101 Mo. 260, 271–272, 14 S.W. 212, 214–215 (1890).

The judgment is affirmed.

All concur.