**STATE of Missouri, Respondent,**

v.

**John W. SOLLARS, Appellant.**

**No. WD 36467.**

Missouri Court of Appeals,
Western District.

January 21, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 4, 1986.

Application to Transfer Denied
April 15, 1986.

Richard E. McFadin, F.A. White, Jr., Kansas City, for appellant.

Ronald R. Holliday, Savannah, for respondent.

Before NUGENT, P.J., and SHANGLER, and MANFORD, JJ.

NUGENT, Presiding Judge.

Defendant John Sollars appeals his conviction on two counts of possessing a motor vehicle on which the manufacturer's identification number has been removed or altered. He challenges the sufficiency of the evidence and the accuracy of the jury instructions on both counts. We reverse and remand for a new trial.

In assessing the sufficiency of the evidence after a guilty verdict, an appellate court must accept as true all the evidence and reasonable inferences that may be drawn from it which support the verdict. *State v. Morgan*, 592 S.W.2d 796, 805 (Mo. 1980) (en banc). The evidence which tends to prove the defendant's guilt follows.

Acting on a tip that the defendant was in possession of two stolen vehicles, four law enforcement officials went to his residence and place of business in Amazonia on October 14, 1983. Sergeant Lyle Krumme from the Missouri State Highway Patrol, Detectives Tim Schweder and Ron Fisher from the St. Joseph Police Department, and Andrew County Sheriff Gary Howard arrived at defendant's car lot that morning to investigate and determine whether the rebuilt or reconstructed vehicles there bore proper identification numbers.

At trial, Sgt. Krumme explained that a vehicle identification number (or VIN) is a unique number placed on every vehicle and its certificate of title. From that number, one can identify the vehicle and determine its year, make, model, series, engine type, style, and place of manufacture. He explained that the thirteen-digit [1] public vehicle identification number (PVIN) is located on the dash board of late-model passenger vehicles or on the door post of earlier models.[2] The engine and transmission of the vehicle also contain a number which is a derivative or shorter version of the PVIN on the dash or door post. A "confidential" number, also a derivative of the full VIN, is located in one of a number of places on each vehicle depending upon the make of the vehicle. The location of confidential numbers is made known only to law enforcement personnel through loose leaf reference books distributed by the FBI.

### The Pickup (Count I)

First, the officials investigated a maroon and silver truck described by Sgt. Krumme as a pickup truck or flatbed truck and by Sheriff Howard as a dump truck. Both Sgt. Krumme and Det. Schweder found a VIN on the dash and a different, additional number on the door post.

The VIN plate on the door post was also unusual because it was attached with nonfactory rivets. Sgt. Krumme explained that the vehicle manufacturers always use rosette type rivets, not available to the public, to attach the VIN plates to passenger vehicles. This door post plate, however, was attached with ordinary smooth rivets. Sgt. Krumme explained that the VIN on the door post, TKU246S500444, signifies that it belongs to a 1976 GMC three-quarter ton pickup. A vehicle of that make and year should bear an identification plate on the door post but not the dash. A title check of that number indicated that the truck had been purchased by the defendant in December of 1979 in Clarinda, Iowa.

He also explained that the VIN on the dash, CKL249S118565, signifies that it belongs to a 1979 Chevrolet three-quarter ton pickup. A vehicle of that make and year should bear an identification plate on the dash but not the door post. A title check of that number revealed that the 1978 pickup had been purchased by William Pettijohn in December, 1978. Both Mr. Pettijohn and Det. Schweder testified that it was reported stolen from Mr. Pettijohn in 1979. Sgt. Krumme further inspected the truck and found the confidential number, C9S118565, a derivative of the VIN on the dash, located on the top frame rail of the pickup under the cab. He later found the

---

1. Since 1981 most passenger vehicles have identification numbers containing seventeen digits.

2. Specifically, Det. Schweder testified that PVIN's on GMC pickup trucks were located on the door post until 1979.

same number on the engine and transmission of the truck.

During cross-examination, Sgt. Krumme admitted that the VIN plate that was located below the striker plate on the door post, although different from all the other numbers on the truck, had not been defaced, altered, or removed from that truck. When he was asked whether the truck was a 1979 Chevrolet pickup with 1976 parts or a 1976 pickup with 1979 parts, Sgt. Krumme replied, "This particular vehicle is a 1979 Chevrolet. The only thing that's been added to it with respect is an alteration of a VIN by fixing a different VIN to the vehicle where it's not supposed to be." He also testified that the numbers on these parts indicate that at the very least the dash, the engine, the transmission, and the frame of this pickup originated with the stolen 1979 Chevrolet.

Detective Schweder also testified that while he was looking at the identification plate on the door post he asked defendant where he got the pickup, and the defendant said he bought the frame, engine, and dash from Larry Heaston. Sheriff Howard, the state's final witness, testified that when he told the defendant that they would have to confiscate two vehicles, the defendant stated that those vehicles are all right; nothing was wrong with them, but if anything was wrong with them, it would be the dump truck because he had purchased the frame, motor, and transmission from Larry Heaston.

Testifying in his own defense, defendant tried to explain the pickup truck's history. He said that in December of 1979 he purchased the 1976 GMC pickup at a car auction in Elwood, Kansas. Several times during cross-examination, he stated that the pickup was red and gray when he purchased it and that to the best of his knowledge it had always been red and gray. He offered into evidence a receipt that he allegedly received when he bought the "red and gray" pickup. The receipt is dated December 13, 1979, from Poodle & Steve's Auto Auction, Inc., located in Elwood Kansas; however, it indicates that the 1976 GMC truck with the identification number, TKU246S500444, is orange and white.

Defendant further explained that this pickup was in a flood and suffered severe damage to its engine, transmission and rear end. To save money he purchased used replacement parts for the truck before he took it to a body shop for repairs. He said that he purchased a motor, transmission, transfer case, frame, and springs from Bob Turner and a rear end and front end from Larry Heaston. Although he did not receive a title to the parts from Bob Turner, he did not tell Sheriff Howard that he purchased the engine, transmission, and frame from Larry Heaston. During cross-examination, defendant specifically stated that he did not purchase a new or different dash for the pickup. He said that he made a "deal" with the body shop that they would take his truck and the parts that he had acquired and repair the truck to his satisfaction in return for " 'X' amount of dollars." Defendant then left on a vacation trip. The repair work had been completed when he returned.

Defendant further testified that he had nothing to do with the identification numbers on the pickup, that he did not move or change them and did not instruct anyone else to do so. Upon cross-examination, defendant admitted that he did not realize that the vehicle bore two different identification numbers until after he had been arrested and later inspected the vehicle in the Highway Patrol's parking lot.

### The Over-the-Road Tractor (Count II)

The officials also investigated a blue and white tractor-trailer unit belonging to the defendant. Sgt. Krumme and Sheriff Howard testified that the tractor's cab appeared to be a Kenworth but it bore International emblems and an International grill. After a close inspection of the vehicle, both men were satisfied that the cab was a Kenworth and that anyone who knows over-the-road tractors would have known that this was a Kenworth and not an International cab.

Sgt. Krumme found a confidential Kenworth number, 204479, on the top, right,

frame rail of the chassis. He also found the same Kenworth number on the right, front bumper of the tractor. Inside the cab, however, he found an International identification plate numbered 25947DGA14157 riveted to the back of the cab, above the driver's seat.[3] Later Sheriff Howard found in the cab's glove compartment a Kenworth identification plate with the number 204479. It was admitted into evidence. The plate is 5½″ x 3½″ and appears from its deformed condition to have been riveted to something at one time. Nevertheless, from its size and the testimony of Sheriff Howard and the defendant, one can infer that it was found loose in the glove compartment.

Sgt. Krumme explained that he did not check the engine or transmission numbers on the tractor because, unlike passenger vehicles, the numbers on those parts on an over-the-road tractor are not derived from or in any way connected with the PVIN. He also said that manufacturers of tractors do not use any special type of rivet to attach the plates. Although he did not explain where the identification plates should be located on a tractor, he did state that the PVIN should correspond with or match the confidential number on the frame. When he found that the confidential number on this tractor did not match the public number in the cab, he did not look any further because he knew that a change had been made in the VIN.

Upon cross-examination Sgt. Krumme admitted that none of the parts on the tractor looked peculiar except that the number on the frame and bumper did not match the public number in the cab. Both he and Sheriff Howard admitted that parts from a Kenworth tractor and International tractor are readily interchangeable. In fact, people frequently change the appearance of an entire cab on these tractors with "kits" either for cosmetic reasons or because they have been wrecked and salvaged.

Mr. Donald Jumps testified for the state that he had purchased the "KW and International, combined, over-the-road tractor" from the defendant in May of 1981.[4] He was out of work at that time and asked the defendant if he could drive the tractor and try to make some money with it. They agreed on a purchase price of $10,000, and defendant lent Mr. Jumps $1,000 to get started. He was to begin making payments when he started making a profit with the truck.

Mr. Jumps testified that the truck had both Kenworth and International parts on it. The defendant told him that it really made no difference whether the truck was titled as an International or a Kenworth but that he was going to title it as a 1968 International. The state then introduced a Missouri Title Application,[5] which was allegedly filled out by Mr. Jumps and a notary public, requesting an original title for a 1968 International diesel truck with the vehicle identification number, Y015558H. During cross-examination, Mr. Jumps admitted that he had obtained a Nebraska title for the tractor and that it was inspected at that time. Later, the defendant introduced into evidence the Nebraska title and inspection slip which described the tractor as a blue and white, 1968 International with the serial (identification) number Y015558H.

After he titled the truck, Mr. Jumps leased it to Hunt Transportation Company and drove it for them. After two and one-half or three months, Jumps returned the tractor to the defendant because he was not making any money with it and did not want any trouble. At the time of trial, Mr. Jumps had not made any payments on the tractor and had not repaid the loan, but the title was still in his name.

---

**3.** This plate was not admitted into evidence because it was removed by an unknown person while parked in the Highway Patrol's lot.

**4.** The parties stipulated that the tractor that Jumps purchased is the tractor in issue here.

**5.** Apparently, the application was never submitted to the department of motor vehicles because the original and all copies are still intact.

Sheriff Howard testified much as Sgt. Krumme had. During cross-examination, he did admit, however, that while they were inspecting the rebuilt tractor, the defendant showed them the remaining Kenworth and International parts that were not incorporated into the tractor.

Defendant Sollars testified that he first owned an International tractor which had been wrecked and was in need of repair because "the cab was falling off." He then replaced some of the International parts with parts from a Kenworth tractor and combined the two "to make one truck which was an International."

He introduced into evidence a cancelled check and explained that it was used to purchase the original International tractor. The April 7, 1978, check payable to Forke Brothers bore the "memo" "1968 International Y015558H" and was stamped "paid" by the bank on April 12, 1978.

Later, when the tractor fell into disrepair, defendant explained, he and his mechanic, Ray Purcell, went to an auction of the Dugdale Packing Company's assets to see if they could purchase the tractor parts to rebuild defendant's International. They found a Kenworth tractor, also in disrepair, and Mr. Purcell told defendant that he could use parts from the Kenworth tractor to rebuild the International tractor and make one running tractor. Defendant then purchased the inoperable Kenworth for $2,500, paying $1,900 cash down. He received no title for the Kenworth but explained that the packing company was using it as a parts truck and that he just bought it "for parts." He did introduce a "bill of sale" into evidence that he said he had received at the auction. It is dated November 19, 1980, and bears the name "Business Assets Corporation" as the seller and "John Sollars Motors" as buyer.[6] The document is printed as an invoice, and

in the "article" column "1967 KW Tractor" is handwritten [7] below which is written "as is." In the amount column "$2,500" appears, and "Received $1,900." is written in large letters across the face of the document.

The Kenworth was towed to defendant's lot where Mr. Purcell combined the two vehicles and created one functioning tractor. It was never used or inspected before defendant sold it to Mr. Jumps. Defendant said that he did not wish to sell the tractor, but his wife persuaded him to sell it to Mr. Jumps to "give him a chance" because he was out of work. Defendant gave the Missouri title to his 1968 International to Mr. Jumps who had it inspected and obtained a Nebraska title in his own name. Eventually, Mr. Jumps brought the tractor back to the defendant and gave him the new title and the inspection slip. As noted earlier, the defendant introduced both those documents, which described the tractor as a blue and white, 1968 International with the identification number Y015558H.

With regard to the identification plates, the defendant testified that he did not change any identification numbers or direct anyone else to change them and had no personal knowledge of whether they had been changed. He admitted that he had seen the Kenworth identification plate in the glove compartment of the tractor when he bought the tractor in 1980, but explained that he was told that the plate was supposed to be there, so he did not disturb it. He also testified that after the tractor had been towed away he found an identification plate lying on the ground beside the spot where the tractor had been. That plate was an International plate numbered, Y015558. Defendant siad that he had seen that plate before on the 1968 International

---

**6.** Defendant and his family own the apparently unincorporated business of Sollars Motors. However, since the distinction between the defendant and his business is not important here, we have referred to all transactions conducted by the defendant as if they were conducted in his own behalf.

**7.** Beside the word "tractor" is an illegible set of figures which the prosecutor characterizes as a VIN. We find nothing on the document, however, to indicate what these figures were intended to be and will not speculate that they were intended to be an identification number.

tractor that he bought from Forke Brothers.

Upon cross-examination, defendant denied that he ever put the other International plate the officials spoke of on the back of the cab. He did not know where the International plate with the VIN 25947DGA14157 came from. Nevertheless, he admitted that he had owned both a 1968 and a 1974 International tractor.

Raymond Purcell, an over-the-road tractor mechanic and friend of the defendant, also testified in his behalf. Mr. Purcell said that he went with defendant Sollars to the Dugdale Packing Company auction and was there when the defendant purchased "that 74 Kenworth" tractor. He said that the Kenworth needed repair and that the defendant had the parts to fix it, so he took parts from the International tractor and the Kenworth tractor and made one operating tractor. On direct examination, Mr. Purcell spoke about taking parts from the International and putting them into the Kenworth. When he was asked upon cross-examination exactly which parts did you take from the International and place in the Kenworth, he replied the "Motor, clutch, guildeline." When he was asked what was model year of the International tractor from which he got the parts, he said, "I'm not really positive. But I believe it was a '74 also.... Or '72, or '74."

Mr. Purcell also said that he had nothing to do with the identification numbers on these trucks and that he did not pay much attention to them. He knew where all the identification plates were supposed to be on trucks and that they were all there. On cross-examination, however, when asked whether he ever recorded any identification numbers from the tractor, he said, "No. I never got inside anything other than the engine."

The defendant was tried on two counts charging violation of § 301.390 [8] which provides in part as follows:

1. No person shall ... knowingly have the custody or possession of a motor vehicle ... on which the original manufacturer's number or other distinguishing number has been destroyed, removed, covered, altered, or defaced....

The following verdict directing instructions were submitted to the jury without objection:

### Instruction No. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 14, 1983, in the County of Andrew, State of Missouri the defendant knowingly had the possession of a 1979 Chevrolet ¾ ton pickup truck, a motor vehicle, and

Second that (on said motor vehicle) the original manufacturer's number or other distinguishing number had been destroyed, removed, covered, altered or defaced, then you will find the defendant guilty under Count I of Possession of a motor vehicle with an altered identification number....

### Instruction No. 6

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 14, 1983, in the County of Andrew, State of Missouri, the defendant knowingly had the possession of a 1969 Kenworth [9] Diesel truck, a motor vehicle, and

Second, that on said motor vehicle the original manufacturer's number or other distinguishing number had been destroyed, removed, covered, altered or defaced,

then you will find the defendant guilty under Count II of Possession of a motor vehicle with an altered identification number....

---

8. All statutory references are to Missouri Revised Statutes, Cum.Supp. 1984, unless otherwise indicated.

9. The year 1969 was never mentioned in evidence by any witness or document when referring to over-the-road tractors.

The jury returned a guilty verdict on both counts. In his motion for judgment of acquittal or new trial, the defendant specifically objected to Instruction No. 5, but he omitted his objection to Instruction No. 6. The court entered judgment in accordance with the verdict.

Defendant challenges the sufficiency of the evidence on both counts and also contends that the trial court erred in submitting Instruction No. 5 and No. 6 to the jury. Although the sufficiency question is a close one as to Count II, sufficient evidence was presented on both counts to enable any reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Nevertheless, the trial court erred in submitting Instructions No. 5 and No. 6.

## I. *Sufficiency of Evidence*
### *The Pickup*

■ From the evidence one could reasonably conclude that the defendant possessed a red and silver pickup which contained two different identifying numbers. The number on the engine, transmission, frame, and dashboard indicated that this pickup was a 1979 Chevrolet that had been stolen in 1979. All of those identification plates or stamps appeared unblemished and properly affixed by the manufacturer indicating that, at the very least, those parts originated with the stolen vehicle. If those were the only identification numbers on the vehicle, no violation would have occurred because they all were in the proper location.

Unfortunately for defendant, however, an additional plate in an improper location was also found on the door post of the pickup. Since that plate was affixed with ordinary rivets not used by manufacturers, it must have been improperly removed from some vehicle and reaffixed to this one. Since the number indicates that the plate belonged to a 1976 GMC pickup purchased by the defendant in December of 1979, a reasonable inference may be drawn that the defendant himself removed the plate from the GMC and affixed it to the pickup in issue here.

According to defendant's own testimony, at the time of his arrest he did not realize that the pickup bore two different identification plates. Shortly after his arrest, he told Sheriff Howard that the only identification plate he knew about was on the door post. He also admitted that he did not have a title to the stolen parts but did have one for the 1976 GMC. The jury might reasonably have concluded, therefore, that when the repair work on the pickup was finished the defendant himself put the GMC plate on the door post so that he could title the truck as such. That evidence was sufficient to enable a reasonable trier of fact to find that the defendant affixed an additional plate to the repaired pickup in an attempt to identify this pickup as the 1976 GMC to which he already had a title.

Defendant argues that such an act does not constitute a violation of the statute. He contends that this truck is not a vehicle on which any identification number has been removed, defaced or altered, that is, no plate has been removed from *this* truck and no individual plate on *this* truck is marred, defaced or altered. He notes that the Chevrolet identification tags are located on the appropriate parts and appear properly affixed by the manufacturer. This truck simply carries an extra or additional plate, and adding a plate or possessing a vehicle with an added plate is simply not prohibited by the statute.

■ The defendant interprets the statute too narrowly. The purpose of affixing and retaining a unique identification number on various parts of a vehicle and its title is to facilitate the tracing, identification and recovery of the vehicle if stolen. *See Star Square Auto Supply Co. v. Gerk*, 325 Mo. 908, 30 S.W.2d 447, 454 (1930), interpreting the predecessor of § 301.390. Affixing an additional plate with a different identification number to the vehicle is an attempt to change or alter that vehicle's identification number even though the original manufacturer's identification plates are still intact. Any motor vehicle that bears an identification plate that was affixed by someone other than the manufacturer and bears a number different from the number affixed

by the manufacturer constitutes a vehicle on which the original manufacturer's number has been altered within the meaning of § 301.390.

### The Tractor

█ From the evidence one could conclude that defendant Sollars owned a blue and white tractor which had been pieced together with parts from different vehicles. The evidence also supports a finding that the body of this cab is a Kenworth but that someone other than the manufacturer has affixed International emblems and an International grill and identification plate to it and has removed a Kenworth identification plate from it.

For example, both Det. Schweder and Sheriff Howard testified that the cab itself was a Kenworth,[10] but it bore International emblems and an International identification plate affixed inside the cab. A Kenworth identification number, 204479, was found on the chassis and bumper of the cab. The defendant's own witness, his mechanic, Mr. Purcell testified that to build this tractor he started with a Kenworth tractor and replaced *only* the engine, clutch and guildeline with International parts. In fact, Mr. Purcell never even went inside the tractor's cab.

The Kenworth cab also contained a Kenworth identification plate found loose in its glove compartment. The number on that plate was the same number found on the chassis and bumper of the cab.[11] The appearance of the plate revealed that it had been riveted to something at one time.[12] That evidence leads to the conclusion that the plate was at one time affixed to the cab in question but has since been removed and placed in the glove compartment.

The defendant himself admitted that he knew the unattached plate was in the glove compartment. The jury could have, therefore, concluded that he knew that he possessed a vehicle on which the manufacturer's identification number had been removed. The jury was entitled to accept and believe some parts of the defendant's testimony and to reject other parts. *State v. Holt*, 592 S.W.2d 759, 774 (Mo.1980) (en banc).

The defendant presented evidence, including his own testimony, and attempted to explain the presence of the different identification numbers found on or near the tractor and its title. The jury must have either disbelieved the defendant or considered his explanation to be incomplete and unacceptable. In fact, the defendant's evidence was so self-contradictory and incomplete that the jury was forced to reject some parts of it, and other parts actually supported the state's case.

The defendant testified that he had originally owned a 1968 International tractor and possessed its title. But when the tractor's cab was "falling off," he purchased the 1967 Kenworth at an auction to use "for parts" to repair the International. He also admitted that he never obtained a title for the Kenworth tractor.

In contrast, Mr. Purcell, the defendant's mechanic, testified that the defendant purchased a 1974 Kenworth at the auction. He also stated that he assembled the tractor in question by using the Kenworth cab and frame and replacing only its engine, clutch and guildeline with parts from a 1972 or 1974 International tractor. If the jury believed Mr. Purcell, then they could have reasonably concluded that the tractor

---

**10.** The state's case would have been more complete if the prosecutor had introduced a comparison between Kenworth and International cabs (either through documentary evidence or expert testimony) and various different photographs of the cab in question to prove that this entire cab was, indeed, a Kenworth.

**11.** The prosecutor failed to introduce a title search of that number and all other numbers found on or near the cab.

**12.** That evidence dispells defendant's argument that the evidence merely proved that an additional plate was found on the tractor and no evidence was presented to show that any plate had been removed from this tractor. An explanation of the location where the Kenworth manufacturer had affixed this public identification plate would have been helpful.

in issue here was in fact a Kenworth and that the only parts on it that came from any International tractor were those mentioned above and the International emblems, grill and identification plate.

Even if the discrepancies between the defendant's testimony and that of his mechanic could be reconciled, his explanation is still incomplete. No mention was made of why the Kenworth cab bore the International insignia and grill or why an International identification plate was affixed to the back of the cab. If Mr. Purcell's testimony is to be believed, then the entire cab must be a Kenworth and someone other than the manufacturer must have affixed the International grill, emblems and identification plate to it.

The defendant never took the rebuilt vehicle to be inspected before he sold it to Mr. Jumps. He told Mr. Jumps that the tractor was constructed from both Kenworth and International parts but that he "was going to just title it as a 1968 International." Defendant does not explain why, since he already had the title for the 1968 International, he "was going to" title this rebuilt vehicle as an International. Defendant himself said that he gave his 1968 title to Mr. Jumps. The jury reasonably could have concluded that defendant intended to change the identification on the rebuilt tractor so that he could use the 1968 International title that he already possessed to give to Mr. Jumps. They might also have decided that the defendant was lying when he testified that he "found" the Kenworth plate in the glove compartment, "found" the International plate numbered Y015558 on the ground, and had no knowledge of the International plate numbered 25947DGA14157, which was affixed inside the cab.[13] The jury could also reasonably have concluded that the defendant himself placed the International insignia on the cab, removed the Kenworth identification plate from the cab, and replaced it with a plate from an International vehicle. That

conclusion is also supported by defendant's documentary evidence. For example, the inspection slip recites the number Y015558H for the "1968 International" vehicle. Thus, an identification plate with that number must have been affixed to the tractor at that time. The defendant admitted that the plate with that number came from his International tractor; therefore, the defendant had possession of the plate and was the logical person to have improperly affixed it to the tractor.[14]

A case such as this one is peculiarly within the province of the jury. Because of much conflicting evidence, a finding of the truth largely depended upon the demeanor and credibility of the witnesses. The defendant's credibility was particularly crucial. The jury was entitled to accept the parts of his testimony that tended to prove his guilt and to reject any of it to the contrary. When all the evidence is viewed in the light most favorable to the state, a rational trier of fact could find the defendant guilty beyond a reasonable doubt on both counts.

## II. *Accuracy of Jury Instructions*

Defendant Sollars also contends that the trial court erred in submitting Instructions No. 5 and No. 6 to the jury because they misdirected the jury as to the element of knowledge required by § 301.390. He argues that the statute requires both knowledge of the possession of the vehicle and knowledge of the alteration or removal of the identification numbers on the vehicle. The instructions given, however, required the jury to find only that the defendant knowingly possessed the vehicles in question and did not require the jury to find that the defendant knew that the identification numbers had been removed or altered. Defendant is correct.

■ The state contends that defendant is in no position to complain about the jury instructions because he made no objection

---

**13.** A title search to determine the origin of both those plates would have been most helpful.

**14.** However, the jury did not need to decide which International plate the defendant affixed to the cab because the removal of the Kenworth plate constitutes a violation of the statute.

to them at trial and made no request or offer of his own instructions. Rule 28.03 [15] provides that a party may, "but is not required to," object to any jury instructions requested by another party, although specific objections to instructions must be included in motions for a new trial unless they were made on the record at the time of trial. Thus, to preserve instructional error, the rule does not require an objection at trial so long as the error is specifically raised in a timely motion for new trial. *State v. McClure*, 632 S.W.2d 314, 316 (Mo. App.1982). The state urges that we reconsider this "authorized sandbagging" rule and abandon it in favor of the more modern federal rule. That we cannot do; only the legislature or the Supreme Court itself is authorized to amend the rules of criminal procedure.

■ Nevertheless, the fact that defendant included a specific objection to only Instruction No. 5 in his motion for new trial presents a problem. As to Instruction No. 6, the defendant directs our attention to the plain error rule. Although this instructional error might constitute plain error, we need not decide that question because the trial judge was given sufficient notice of the error in Instruction No. 6 by the new trial motion that specifically alerted him to the error contained in Instruction No. 5 since the language of the two instructions was nearly identical.

Defendant's motion for new trial specifically stated that Instruction No. 5 was erroneous because it required only knowing possession of the pickup but not knowledge of the alteration in the identification number. Since, except for the vehicle description, the language of the two instructions is identical, the trial judge must have known that if Instruction No. 5 was incorrect then Instruction No. 6 was also incorrect. The purpose behind Rule 28.03 is to give the trial court an opportunity to rectify instructional error by granting a new trial without the delay and expense of an appeal. Here, the trial judge obviously decided that Instruction No. 5 was correctly

worded. Thus in his eyes Instruction No. 6 must also have been correct since the critical language of the two was the same.

■ As to the accuracy of the instructions, the state argues that both instructions were correct because they track the language of the statute. Ordinarily, jury instructions which hypothesize the elements of a statutory offense in the language of the statute are sufficient if the offense is not included in Missouri Approved Instructions. *State v. Adams*, 532 S.W.2d 524, 529 (Mo.App.1976). But that is not what the prosecution did in this case.

The statute provides that "[n]o person shall ... knowingly have the ... possession of a motor vehicle ... on which the ... manufacturer's number ... has been ... removed [or] altered...." § 301.390. On the other hand, the jury instructions given in this case state: "if you find and believe from the evidence ... First, that ... the defendant knowingly had the possession of ... a motor vehicle, ... and Second, that on said motor vehicle the ... manufacturer's number ... had been ... removed [or] altered...." The difference in structure between those two sentences is crucial.

■ By stating that "no person shall knowingly have the possession of a vehicle on which...." the statute requires that the defendant have knowledge of both the possession and the alteration or removal. In the legal sense, the word "possession" of itself requires that the defendant be aware of the existence of the object he is charged with possessing. *See State v. Burns*, 457 S.W.2d 721, 724 (Mo.1970). Thus, if it is to have meaning in § 301.390, the word "knowingly" must refer to knowledge of the fact that the manufacturers number has been removed or altered.

This case is much like *State v. Burns* where the Supreme Court was interpreting the meaning of our narcotics law, § 195.-

---

**15.** Missouri Rules of Criminal Procedure.

020,[16] which at that time provided that "[i]t is unlawful for any person to ... possess ... any narcotic drug, except as authorized in this law...." There the court pointed out that although the word "knowledge" is nowhere in the statute, the test of actual or constructive possession is whether the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. *Id.* at 725, *citing State v. Young*, 427 S.W.2d 510, 513 (Mo.1968); *See also State v. Polk*, 529 S.W.2d 490, 492 (Mo.App.1975). In that statute the gravamen of the offense was the defendant's knowing possession of a substance that defendant knew to be the narcotic drug. Here, the gravamen of the § 301.390 offense is the defendant's knowing possession of a vehicle on which the defendant knows that an alteration or removal of identification numbers has occurred. Accordingly, we hold that the element of knowledge expressed in § 301.390 includes the requirement that the defendant have knowledge of the fact that on the vehicle he possesses the identification number has been removed or altered.

The legislature must have intended such a meaning, otherwise an unsuspecting buyer knowing only that he possessed the vehicle and not that the VIN had been altered or removed could be found guilty of violating the statute. The legislature did not intend such a result.

Construing a similarly worded motor vehicle identification number statute, the court in *People v. Sequin*, 199 Colo. 381, 609 P.2d 622 (Colo.1980) (en banc), held that if knowledge of the altered VIN is not an essential element of the offense "a purchaser assumes a high risk of committing a crime whenever he acquires an automobile." *Sequin* at 625. There the court said:

We hesitate to ascribe to the legislature an intent to create the dampening effect on legitimate commercial transactions which would result from such a statutory construction. Even more importantly, we will not lightly assume that the legislature intended to subject conduct to serious criminal penalties without requiring a culpable mental state.... Indeed, a culpable mental state almost certainly is constitutionally mandated if a criminal statute of [this] nature ... is to comport with due process of law. (Citations omitted.)

Another court examining the same question has held that the act of possessing an automobile on which the VIN has been obliterated "is not such an act as is governed by the concept of mala prohibita and subject therefore to absolute criminal liability. Some requirement of criminal intent or guilty knowledge must be read into the statute ...; mere possession is not sufficient to sustain a conviction under the law." *Commonwealth v. White*, 259 Pa. Super. 397, 393 A.2d 886, 887 (1978). *See also Dooley v. State*, 145 Ga.App. 539, 244 S.E.2d 55, 56 (1978) ("We agree ... that guilty knowledge is the gist of the offense").

█ The jury instructions given in this case were worded in such a way that a jury would have been forced to convict such an innocent possessor. By stating that if the jury finds *first*, that the defendant knowingly possessed the vehicle, and *second*, that on said vehicle the identification numbers had been altered or removed, the instructions specifically *exclude* any requirement that the defendant have knowledge of the alteration or removal. Thus, the trial court incorrectly instructed the jury by omitting the element of knowledge of the alteration or removal required by the statute. That constitutes reversible error. *See Burns, supra*, 609 P.2d at 725.

█ The state argues that when the instructions are read together with the closing arguments defendant's point on instructional error must fail. We first note that § 546.070 provides that

"[i]n every trial for a criminal offense the court shall instruct the jury in writing upon all questions of law arising on the

16. Missouri Revised Statutes, 1969.

case which are necessary for their information in giving the verdict. . . ."

*State v. Burgess,* 457 S.W.2d 680, 681 (Mo. 1970) (en banc), held that the court must so instruct the jury whether requested or not and that the instructions must cover all essential elements of the offense. Thus, the trial court, not the attorneys, has the ultimate responsibility to instruct the jury on matters of law. The verdict director is the most important of all instructions in a criminal trial. An erroneous verdict directing instruction which omits a major element of the offense constitutes reversible error which may not be cured or salvaged by any amount of clarification by counsel during closing arguments.

For the foregoing reasons, we reverse and remand the case for new trial on both counts.

SHANGLER, J. concurs.

MANFORD, J. concurs in part and dissents in part by way of separate opinion.

MANFORD, Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority opinion regarding appellant's challenge to the sufficiency of the evidence. The record reflects evidence which was introduced by the state and controverted by appellant sufficiently to warrant submission of the case to the jury. This is all this court is entitled to determine on that issue.

As regards the final issue, appellant's challenge to the instructions, I must dissent. The majority concludes that the trial court erred in the submission of two instructions. I disagree.

The majority, in essence, adopts appellant's argument that § 301.390, RSMo Supp.1982 requires, for conviction, a finding of both the knowledge of the possession of the vehicle and the knowledge of the alteration or removal of the identification numbers on the vehicle. From this position, appellant argues, and the majority concludes, that the instructions are erroneous because said instructions did not include a required finding of knowledge that the identification numbers were removed or altered.

There is no dispute that the instructions did not require a finding that appellant had knowledge of the removal or alteration of the numbers. Indeed, the instructions do not include such a finding. The question before this court is whether the instructions were erroneous in not having included such a finding.

Contrary to the majority view, § 301.390 does not require that a person in possession of a vehicle upon which identification numbers have been removed or altered must also know of the removal or alteration. Possession of the vehicle, that is a *knowing possession* of the vehicle in such condition, constitutes the offense. The majority, by its conclusion, adds another element to the offense which the statute does not require. In other words, proper evidentiary proof of the known possession of a vehicle in such a condition satisfies the requisites of the statute and will support a conviction for the offense within the elements of the offense prescribed by the very terms of the statute.

The majority "infers" what the General Assembly must have meant by the terms of the statute. The more correct judicial consideration of the statute is to conclude that had the General Assembly intended that knowledge that the vehicle numbers were removed or altered be an element of the offense directly provable, the General Assembly would have, by the terms of the statute, included knowledge as a requisite element in expressed terminology.

There is no doubt that within the evidence upon this record, appellant's "knowledge" could be inferred. Indeed, it is this very inference which in part supports the submission of this case to the jury in the first instance.

The majority goes even further and concludes that the error in the verdict-directing instruction "may not be cured or sal-

vaged by any amount of clarification by counsel during closing arguments." That is not the issue. The issue is whether the instructions, when read together, are erroneous. In considering instructional error, our courts consider *all* the instructions in a given case. When the two instructions are read together, and when read together with all the instructions herein, and when the statute is given its intended meaning and is not embellished with what the majority wishes the statute would say, there is no instructional error.

This case points out again the necessity of revising Rule 28.03 and adopting a preferred rule which would require a specific objection to the giving of an instruction prior to submission. Respondent herein is correct that the rule and the interpretation given the rule in *State v. McClure*, 632 S.W.2d 314 (Mo.App.1982) amounts to "sandbagging." The Missouri Supreme Court should, and is hereby urged to, take up said rule and to revise the same along the line of the modernized federal rule.

As to the case at hand, there is no merit to appellant's challenge to the instructions; and the majority opinion, in directing a reversal of this conviction, has supplied a legislative "intent" to said statute which obviously was never intended by the General Assembly. In addition, and just as obviously, the very wording of the statute does not even suggest, let alone permit, such added "intent."

The judgment and conviction should in all respects be affirmed.